PAUL EUGENE FRANKS, JR. *v.* STATE OF INDIANA.

[No. 374S65. Filed February 18, 1975.
Rehearing denied April 15, 1975.]

*Joseph A. Williams,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Gary M. Crist,* Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was indicted on two counts of first-degree murder: Count 1, felony murder; Count 2, premeditated murder. Trial by jury resulted in a verdict of guilty on both counts. Appellant was sentenced to life imprisonment on each count of murder.

The following is shown by the record: On September 26, 1965, at about 10 minutes before midnight, the Appellant and a companion, Danny Schrader, entered the Kwiki Market in Fort Wayne, Indiana. The only person in the store at the time was Robert Glenn Benedict, the night manager. The Appellant and Schrader took approximately Six Hundred Dollars ($600.00) in cash and forced Mr. Benedict to accompany them. They drove to a deserted lane where Schrader tied Benedict's hands behind his back. Benedict was then forced to walk into a nearby cornfield where he was shot by the Appellant. After Benedict had fallen, Appellant continued to shoot at him until the gun was empty. Appellant reloaded the gun and Schrader then fired several shots into Benedict's body.

On the day after the robbery and murder, Appellant and Schrader picked up Bentley Zieg and drove to Detroit, Michigan. On the way, Appellant told Zieg of the murder and robbery of the night before. Benedict's body was not discovered until October 1, 1965.

After investigation, Robert Groves, a member of the Fort Wayne Police Department, interviewed the Appellant at the Indiana Boys' School on January 14, 1966. Groves testified

that he showed the Appellant photographs of Benedict's body and that the Appellant became very nervous and frightened.

Appellant first claims the trial court erred in overruling a motion to dismiss. The argument is based on IC 31-5-7-13 (BURNS IND. ANN. STAT. 1973), which provides in part that if a complaint of a criminal nature is made or pending in a court other than a juvenile court, that on ascertainment that the person was under the age of eighteen (18) years at the time of the alleged offense, the defendant must be transferred to the juvenile court, except, however, when the person is charged with a capital offense he need not be so transferred. At the time the crime was committed, the Appellant was sixteen (16) years of age.

He points out that at the time of his trial there was no death penalty in Indiana, citing *Furman* v. *Georgia* (1972), 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346. He thus claims that the trial court was without jurisdiction to proceed and that he should have been transferred to the juvenile court. *Cummings* v. *State* (1969), 252 Ind. 701, 251 N.E.2d 663, 19 Ind. Dec. 68. This matter has recently been considered by this Court and decided contrary to Appellant's position. *Martin* v. *State* (1974), 262 Ind. 232, 314 N.E.2d 60, 43 Ind. Dec. 88. In that case, this Court stated:

> ". . . [O]ur task here is one of interpreting the legislative intent embraced in a 1945 Act fixing the jurisdiction of the juvenile courts. We do not believe that the opinions in *Furman* and *Adams* can be legitimately viewed as expressions of legislative intent on the issue of jurisdiction between court systems. It is apparent that the language in the 1945 Act referring to the death penalty was a definitional method of excluding certain persons who committed certain types of especially heinous offenses from the purely rehabilitative approach of the juvenile system. We believe it is clear from the statutory scheme of the Juvenile Court Act that the reference to the death penalty was intended to designate a certain group of crimes rather than a certain type of punishment. The subsequent decisions of the United States and Indiana Supreme Courts declaring the present use of the death penalty to be unconstitutional cannot be held

as affecting this underlying legislative decision." 314 N.E. 2d at 67, 43 Ind. Dec. at 95.

We, therefore, hold the trial court did not err in overruling Appellant's motion to dismiss.

Appellant next claims the trial court erred in not giving him credit for time served, citing IC 35-8-2.5-1, BURNS IND. ANN. STAT. (1974 Supp.) § 9-1828. This statute reads as follows:

> "When sentencing any person convicted of a crime the sentencing court shall order that the sentenced person be given credit toward service of his sentence for any days spent in confinement as a result of the criminal charge for which sentence is imposed or as a result of the conduct on which such charge is based. The court shall specify in its order of commitment the number of days credit to which the person sentenced is entitled pursuant to this section. [IC 1971, 35-8-2.5-1, as added by Acts 1972, P.L. 219, § 1, p. 1002.]"

The State urges that part of the time for which Appellant seeks credit was spent in jail as a result of another offense and therefore should not be allowed. The record shows that Appellant was arrested on October 13, 1971 for this offense and that sentence was imposed March 23, 1973. Further, the record indicates that between his arrest and the beginning of his trial, Appellant was granted a continuance for the purpose of defending himself in another proceeding wherein he was tried and convicted. IC 35-8-2.5-2, BURNS IND. ANN. STAT. (1974 Supp.) § 9-1829, reads as follows:

> "Whenever the criminal charge or charges for which sentence is imposed or the conduct on which such a charge or charges is based culminate in more than one [1] sentence, the time and credit provided for in section 1 [§ 9-1828] of this chapter shall be applied as follows:
>
> "(a) If the sentences run concurrently, the credit shall be applied against each sentence;
>
> "(b) If the sentences run consecutively, the credit shall be applied against the aggregate term of the sentences. [IC 1971, 35-8-2.5-2, as added by Acts 1972, P.L. 219, § 1, p. 1002.]"

There is nothing in this record to indicate that the sentence for the murder conviction was to begin after the completion of Appellant's previous sentence. Consecutive sentences may be given only where specifically provided by statute. *Baromich* v. *State* (1969), 252 Ind. 412, 249 N.E.2d 30, 18 Ind. Dec. 168. There is no statutory provision which requires the conviction in this case to run consecutively to Appellant's previous conviction. Thus, full credit should have been allowed even though Appellant was awaiting two trials on different crimes during the same period and was convicted and sentenced separately on each. The trial court erred in failing to grant Appellant credit for the days he spent incarcerated from the time of his arrest on this charge until sentencing on this charge. Even though the Appellant has received a life sentence, the time at which his sentence is to commence may well become a pertinent factor in the future should he receive executive clemency reducing his sentence to a determinate one.

Appellant next claims his conviction is not supported by sufficient evidence. He contends the witnesses who testified against him were incapable of providing substantial and probative evidence due to their lack of credibility. Although Appellant's accomplice, Danny Schrader, and other witnesses who testified against Appellant may have been persons with questionable reputations and credibility, this was a matter for the jury to determine. This Court will not invade the province of the jury in determining the credibility of witnesses. *Black* v. *State* (1973), 261 Ind. 410, 304 N.E.2d 781, 40 Ind. Dec. 200. Had Schrader been the State's only witness, the verdict of the jury would be sustained. This Court has previously held that the defendant may be convicted on the uncorroborated testimony of a witness. *Glover* v. *State* (1970), 255 Ind. 304, 263 N.E.2d 723, 23 Ind. Dec. 614. We hold the evidence in this record is sufficient to sustain the verdict of the jury.

The Appellant next claims the trial court erred in sentencing

him to two life imprisonment sentences for the same killing. Appellant is correct in this contention. Although the evidence sustains the jury verdict of guilty under either count, the trial court could not impose a sentence on each count. *Carter* v. *State* (1951), 229 Ind. 205, 96 N.E.2d 273; *Steffler* v. *State* (1952), 230 Ind. 557, 104 N.E. 2d 729. We, therefore, hold that the sentence of life imprisonment on one of the counts must be vacated.

The Appellant next claims the trial court erred in giving Preliminary Instruction No. 5 and Final Instructions Nos. 5 and 17. These instructions informed the jury that on a finding of guilty of first degree murder, they could impose the death penalty or sentence the defendant to life imprisonment. Although some confusion may have existed as to the constitutionality of the death penalty in Indiana following the decisions in *Furman* v. *Georgia, supra,* this Court in *Adams* v. *State* (1972), 259 Ind. 164, 284 N.E.2d 757, 32 Ind. Dec. 67, held Indiana's death penalty unconstitutional. See also *Turczi* v. *State* (1973), 261 Ind. 273, 301 N.E.2d 752, 39 Ind. Dec. 103, and *Martin* v. *State, supra.* We, therefore, hold the trial court erred in informing the jury that they could impose the death penalty. However, we also hold that Appellant was not harmed by such instruction. He did not receive the death penalty, but was sentenced to life imprisonment, which was the only penalty available for first degree murder. Although the court erred in giving the instruction, we hold that such error was harmless. Therefore, it does not constitute reversible error. 9 I.L.E. *Criminal Law* § 892.

Appellant next claims the trial court erred in allowing witnesses to reveal his juvenile record and evidence of other crimes. During the questioning of police officers by the State, they were asked where they had interviewed the Appellant. Captain Richard Miller testified he had interviewed the Appellant on January 14, 1966, at the State House in Indianapolis, and again interviewed

the Appellant on January 22, 1966, in the Indiana Boys' School at Plainfield. Detective Groves testified that he was present at these two interviews. Acquaintances of the Appellant testified that they arrived at the Indiana Boys' School with the Appellant on the same day. Another witness testified that he was a roommate of Appellant while they were inmates at the Indiana Boys' School and that Appellant had bragged to the other inmates about the robbery and the murder. The testimony of all of these witnesses was merely that the Appellant was at the Boys' School. There was no evidence elicited or given as to the matter of his conduct which caused his incarceraton in the Boys' School. We hold that the surroundings in which interviews are taken and admissions given are relevant to the credibility of that information. We, therefore, hold that the trial court did not commit error in allowing the witnesses to testify as to Appellant's incarceration in the Boys' School.

As to the admission of evidence which revealed the commission of other crimes, the Appellant calls attention to the testimony of Danny Schrader and Bentley Zieg. Schrader testified that Appellant obtained the murder weapon from "a place that we broke into." Schrader further testified that they divided the money obtained from the Kwiki Market robbery at a place where they had been three other times for similar purposes. Zieg testified that Appellant was part of a robbery gang which he headed. Appellant is correct in his contention that the general rule is that evidence of other crimes is inadmissible. *Raines* v. *State* (1968), 251 Ind. 248, 240 N.E.2d 819, 15 Ind. Dec. 484. However, there are exceptions to this rule. This Court has recognized that where intent is a necessary element of proof, evidence of similar crimes from which there is a tendency to show intent is admissible. *Gerber* v. *State* (1972), 258 Ind. 171, 279 N.E.2d 542, 29 Ind. Dec. 572. In the case at bar, intent to rob is relevant to the felony murder charge of the indictment, and was therefore properly admitted.

Appellant next claims the trial court erred in not permitting Richard Miller to answer the following question on cross-examination regarding lie detector tests.

"Now Captain Miller, haven't you made arrests and—for me with defendants, and then dismissed the charges where the result was inconclusive, as in the case of the defendant here?"

The trial court was correct in refusing to allow an argumentative question. *Palmer* v. *State* (1972), 153 Ind. App. 648, 288 N.E.2d 739, 33 Ind. Dec. 352. The scope of cross-examination is within the sound discretion of the trial court. Error in admitting or refusing questions on cross-examinations will be found only in situations where an abuse of discretion is shown. *Webster* v. *State.* (1973), 155 Ind. App. 510, 293 N.E.2d 529, 35 Ind. Dec. 507. We, therefore, hold the trial court did not err in refusing to admit this type of questioning.

Appellant next claims the trial court erred in allowing witness Groves to state a conclusion. The prosecutor asked the witness what he observed the Appellant do when he was shown the photographs of the deceased. After the overruling of Appellant's objection, Groves answered that the Appellant became very nervous and had an expression of fright on his face. Groves further testified that Appellant refused to look at any more pictures. We hold the trial court did not err in permitting the witness to answer as to facts perceived by his senses. 13 I.L.E., *Evidence*, § 251.

This cause is remanded to the trial court with instructions to vacate one of the life sentences and to give Appellant credit for the days he was incarcerated between the day of his arrest on this charge (October 13, 1971), and the day of his sentencing (March 23, 1973).

The judgment of the trial court is, in all other things, affirmed.

Arterburn, DeBruler, Hunter and Prentice. JJ., concur.

NOTE.—Reported at 323 N.E.2d 221.