JOHN M. HOLLAND *v.* STATE OF INDIANA.

[No. 1075S273. Filed August 24, 1976.]

*John D. Clouse,* of Evansville, for appellant.

*Theodore L. Sendak*, Attorney General, *Elmer Lloyd Whitmer*, Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was charged by indictment in two counts. Count I charged first degree murder; Count II charged murder in the commission of a robbery. A jury trial resulted in a finding of guilty of second degree murder as to Count I and guilty as charged on Count II. The trial court entered judgment sentencing the appellant to fifteen to twenty-five years under Count I and to life imprisonment under Count II. The trial court further ordered that the sentences should commence after the appellant had been released from the Kentucky State Penitentiary where he was serving a sentence at the time of his trial.

The record discloses the following facts: On the evening of November 7, 1973, the decedent was introduced by Jerry McFarland to Mary Poggioli, who was a prostitute. The purpose of the introduction was to procure Miss Poggioli's services as a prostitute for the decedent. After going to several bars in town, the decedent and Miss Poggioli went to decedent's apartment where a disagreement occurred between them as to sexual acts desired by the decedent. No sexual acts were performed, however Miss Poggioli demanded a sum of money previously agreed upon, which the decedent refused. She left decedent's apartment, went to the nearby home of a friend, Darlene Faver. Jerry McFarland and Miss Faver were at the home.

After hearing Miss Poggioli's story, McFarland sent for the appellant Holland, who lived across the street. When Holland arrived McFarland gave him a .25 caliber pistol. McFarland, Holland and Miss Poggioli then discussed the possibilities of robbing the decedent because he was seen earlier to have been carrying a large sum of money on his person.

The three persons then went to the decedent's apartment. McFarland stayed outside while the appellant and Miss Poggioli went to the door. The appellant stood to one side while

Miss Poggioli stood in such a manner as to be visible through the "night peeper hole" in the door. In response to her knock, the decedent opened the door and both she and the appellant entered. The decedent and the appellant did not know each other.

The decedent was seated on a couch eating a steak on a coffee table while he conversed with appellant and Miss Poggioli. During the conversation decedent held a steak knife in his hand. When the appellant demanded money from the decedent an argument began and Miss Poggioli fled from the apartment. She asked McFarland to go to the apartment. She was afraid the appellant would be hurt. As McFarland started toward the door the sound of a shot was heard. When McFarland came through the door he saw the decedent standing with his hand on his chest. In a few seconds he fell backwards. At that time the appellant was "standing there with a gun in his hand." McFarland left at once. Some five minutes later the appellant came from the apartment and the three returned to Miss Faver's apartment.

Shortly after returning to Miss Faver's apartment, McFarland, Mary Poggioli and the appellant returned to the decedent's apartment with other persons and proceeded to ransack the apartment, removing several objects of value.

Both McFarland and Miss Poggioli had been charged in this case. McFarland entered a plea of guilty to armed robbery and received a ten year sentence. Miss Poggioli entered a plea to accessory to voluntary manslaughter and was sentenced to two to twenty-one years. Each of them testified as State witnesses against the appellant.

McFarland testified that the appellant stated before going to the decedent's apartment that if he did not get the money for Miss Poggioli he would have to shoot and kill the decedent. Evidence showed that the decedent died of a gunshot wound from a .25 caliber pistol. The bullet was fired from above the point where it entered the decedent's chest. It traveled through the decedent's heart and lodged near the spine.

Appellant's first contention of error is that the trial court erred in overruling and denying his motion to dismiss, which motion was in four parts. We will address ourselves to each of the four parts separately.

(1) "There is duplicity of allegation in Counts I and II." Here appellant argues that he was charged with two criminal offenses which actually constituted one transaction. We agree with the appellant in his factual conclusion that he was charged with two crimes growing out of a single transaction. However, such a charge is permissible. See *Lee* v. *State*, (1938) 213 Ind. 352, 12 N.E.2d 949; *Knox* v. *State*, (1905) 164 Ind. 226, 73 N.E. 255; *Robbins* v. *State*, (1976) 264 Ind. 503, 346 N.E.2d 251, 52 Ind. Dec. 466.

Appellant argues that the double charge placed him under a disability in that he was required to defend two charges when he should only have been required to defend one. We fail to see the logic of this reasoning. The case presented by the State was that the appellant had, in fact, killed the decedent in the perpetration of a robbery. We fail to see how the alleging of murder in two separate counts increased the burden upon the appellant in making his defense.

The appellant cites *Thompson* v. *State*, (1972) 259 Ind. 587, 290 N.E.2d 724, 34 Ind. Dec. 335. In so doing he recognizes that it is not squarely in point, but that it holds that the trial court may enter judgment and post sentence upon only one of the crimes which arise out of a single transaction. We hold the trial court did not err in refusing to dismiss the charges against the appellant because of the two count indictment. However, we also hold the trial court was in error in presuming to pronounce sentence on both counts. This is in violation of the principles laid out in *Thompson* v. *State, supra*. The trial court should have sentenced the appellant to life imprisonment only on the conviction of a homicide while in the perpetration of a felony.

(2) "This grand jury proceeding was defective pursuant to IC 1971, 35-3.1-1-7(b)(1) and (4) . . . ."

Appellant first claims the grand jury consisted of twelve persons. However, an examination of the record in this cause shows the grand jury actually consisted of six, as required by the statute.

Appellant next claims the grand jury was defective because the clerk did not certify to the drawing of the grand jurors' names, as required by the statute. However, he does not allege any bad faith on the part of the clerk nor does he show in what manner he was prejudiced by this failure on the part of the clerk. Without such allegations we hold any defect of this nature is harmless error. See *Flowers* v. *State,* (1956) 236 Ind. 151, 139 N.E.2d 185; *Anderson* v. *State,* (1941) 218 Ind. 299, 32 N.E.2d 705.

Appellant next claims the grand jurors were not called to the box in the order in which they were drawn. However, we cannot actually determine this from the record before us. Not all persons selected as prospective grand jurors qualify to serve as such. The mere fact that they may be assigned numbers at the outset of the selection process does not mean that those eventually serving on the grand jury must be called in a numerical sequence. We see no evidence in this record as to the sequence in which the jurors were actually called, but only the numbers of the jurors who eventually served. Even if we were to concede that this procedure was irregular, we see no reversible error in that there is nothing shown by this record that would be interpreted as being prejudicial to the fundamental rights of the appellant.

"Said defendant has been denied the right to a speedy trial."

At the time of the indictment in this case the appellant was incarcerated in the State of Kentucky serving a sentence there. It is his claim that he was not afforded a trial within the time required under IC 35-2.1-2-4 (Burns 1975) the pertinent part of which reads as follows:

## "ARTICLE 3

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty [180] days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

On August 26, 1974, the appellant caused a letter to be sent to the Vanderburgh County Prosecutor's office requesting a trial on the charge in Vanderburgh County. The record does not disclose when that letter was actually received by the prosecuting attorney in Vanderburgh County, however, it does show that on September 4, 1974, a reply was sent to that letter from the prosecutor.

The first trial of the appellant was commenced on February 23, 1975. This was within the time prescribed by the statute, in spite of the fact the appellant had obtained two continuances of his arraignment. A mistrial was declared due to the misconduct of a State's witness during the presentation of the State's case in chief. The second trial, which is the subject of this appeal, was begun April 7, 1975. The appellant raises the question as to whether or not the 180 days provided by the statute should start to run from the time the appellant mailed his request in Kentucky or whether it should start to run from the time it

was received by the prosecuting attorney in Indiana. The statute itself answers the question raised by the appellant. It there states: ". . . [h]e shall be brought to trial within one hundred and eighty [180] days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice . . . ." We therefore hold that notice under the statute is not effective until it has been delivered to the prosecuting attorney and the appropriate court having jurisdiction.

Appellant argues that since the record shows appellant mailed his letter from Kentucky on August 26, 1974, that this Court should take judicial notice that it does not take more than a day to deliver a letter; therefore, we should assume, in the absence of a showing in the record, that his letter was delivered on the 26th day of August. Even if we could take such judicial notice, which we do not hold that we can, we could not assume the letter was delivered on the same day it was mailed. We would have to presume the letter would be delivered not earlier than the day after it was mailed, which would be August 27. Even assuming such to be the fact, we find that the trial commencing on February 23, which was the 180th day after the earliest possible time the request could be presumed to have been delivered. We therefore hold the first trial was commenced within the time provided by the statute.

Appellant next argues that even if the Court should find the trial commenced within the 180 days provided by the statute that he should not be charged with the mistrial which resulted in the first trial and that the 180 days had certainly expired before the second trial began on April 7, 1975. We do not agree with this position taken by the appellant. The record in this case clearly indicates that he received a new trial based upon his motion made on the 25th day of February, 1975. The law is well settled that when a defendant obtains a new trial upon his own motion, by any means, whether it be by moving for a

new trial, moving in arrest of judgment, taking an appeal, by post-conviction remedy or any other means, he is not entitled to a discharge but must proceed with the new trial as though the original trial had not been dismissed. *Slack* v. *Grigsby,* (1951) 229 Ind. 335, 97 N.E.2d 145; *Todd* v. *State,* (1951) 229 Ind. 664, 101 N.E.2d 45; 1 Ewbanks Indiana Criminal Law § 490 (Symmes Ed. 1956). We therefore hold that appellant by exercising his right to a new trial waived any time restriction imposed upon the State to bring him to trial at the second trial received upon his request.

Appellant next claims he was denied his right to a speedy trial granted by Rule 4 of the Indiana Rules of Criminal Procedure. As pointed out above, appellant was brought to trial within 180 days of his request to the State of Indiana to be brought to trial. We therefore hold that the State complied with the provisions for speedy trial contained in Ind. R. Crim. P. 4.

(4) "Count II of the indictment does not state the crime with sufficient certainty."

Here appellant bases his argument on the fact that he was charged both with premeditated murder and murder in the commission of a felony. We cannot agree with appellant in his position that this left him in such a state of uncertainty that he was not able to present his defense. See *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686, 34 Ind. Dec. 684; *Dorsey* v. *State,* (1970) 254 Ind. 409, 260 N.E.2d 800, 22 Ind. Dec. 204. We hold the indictment in this case was not void for uncertainty. We hold the trial court did not err in overruling appellant's motion to dismiss.

Appellant next claims the trial court erred in "striking" a question propounded by defense counsel on cross examination of State's witness Gerald Baggerly. Appellant's first contention that it is improper to "strike" a question is technically correct. However, in reading the transcript in this case it is obvious such action on the part of the trial court consisted of no more than sustaining an objection to the

question. We hold there was no prejudicial right of the appellant violated by the use of the terminology "strike." We go then to the question of whether or not the trial court erred in sustaining the objection to the question. In cross examining the witness as to the reputation of the decedent in the community the appellant was seeking to elicit information concerning specific incidents of aggressive and assaultive action on the part of the decedent. The witness being questioned was a police officer who had known the decedent for a number of years. He specifically stated that he did not know his reputation for violence or disregard for the law other than that he had arrested the decedent at one time for molesting a female child. The trial court specifically stated that he would allow questioning concerning the decedent's general reputation for violence. However, the excluded question was "Did you hear about a murder at the Hub Bar in which Pat Strickland was a suspect?" The trial court was correct in his ruling that counsel could go into convictions or general reputation of the decedent, but he did not permit the question at issue here. We find no error in the trial court in sustaining an objection to such question. See 40 Am. Jur.2d Homicide § 306.

The appellant next claims the court erred in overruling his motion to strike an answer elicited during the direct examination of the State's witness Darlene McFarland. The witness was asked what she was afraid of. Her answer was, "Of Johnny Holland." Counsel for the appellant immediately moved to strike the response as being purely a conclusion on the part of the witness. We do not agree with the appellant in this observation. The witness was not being asked what some other person's thought process was but her own. Such a question and a response is proper. II Wigmore, Wigmore on Evidence § 581 (3d ed.).

He also claims the trial court erred in permitting Miss McFarland to answer the question, "Do you know why Detective Baggerly insisted on taking a second statement from you?" A proper objection was made to this question on

the ground that it called for a conclusion on the part of the witness. The objection was correct and should have been sustained. However, a further examination of the record discloses in answering the question the witness did not attempt to state what Detective Baggerly was thinking or why he insisted on taking a statement from her. Her response to the question was that she gave a second statement to the police because her first statement was made when she was ". . . scared for my own sake and for my children's lives." It thus becomes clear that although the question was improper and the objection should have been sustained to the question, no harm was done to the appellant. The answer given was not responsive to the objectionable portion of the question and was merely an explanation by the witness as to why she gave two statements to the police. We therefore hold there was no reversible error in either of the two above incidents during Miss McFarland's testimony.

Appellant next claims the trial court erred in sustaining the State's objection to a question propounded by the appellant during the direct examination of Thomas Whitmer and in striking the answer of the witness. In answer to the question the witness answered, "He just jumped up from the table and pulled the knife and said, I'll cut your guts out." The State objected on the ground that the answer was hearsay and that it was not part of the res gestae of the crime for which the appellant was being prosecuted. The answer of the witness referred to an incident prior to and entirely separate from the crime charged. Because of the question of self defense raised by the appellant, the trial court had permitted counsel for the appellant to question witnesses concerning the general reputation of the decedent concerning his violent and assaultive nature. However, the court properly excluded specific acts of violence on the part of the decedent against persons other than the appellant. This is especially true in view of the fact that the appellant had no knowledge, nor had he been informed, of the reputation of the decedent prior to the incident resulting in

decedent's death. 40 Am. Jur. 2d Homicide § 306. We therefore hold the trial court did not err in sustaining the State's objection and striking the response of the witness.

Appellant next claims the trial court erred in excluding his exhibit 2 from evidence. Exhibit 2 consisted of a 30-page police record of the decedent. It is appellant's contention that such record should have been placed in evidence in view of the issue of self defense, in that the record demonstrated the appellant had been arrested on several occasions for matters connected with assaults on other persons. He further claimed the placing of the record in evidence would refute testimony of police officers that they had no knowledge of appellant's general reputation for peace and quietude in the community. There was no foundation laid to demonstrate that the questioned officers in fact had any knowledge of the police record of the appellant. The court could not presume the officers knew of a particular police record without a specific showing that such was the fact. As above stated, there is no indication in this record that the appellant knew the decedent prior to the altercation leading to decedent's death, nor is there any indication that he knew of any reputation of the decedent for violence or assaultive nature. Therefore, the 30-page police record of the decedent was not admissible and the trial court did not err in sustaining the State's objection. 40 Am. Jur.2d Homicide § 306, *supra.*

Appellant next claims the trial court erred in overruling and denying his motion for a mistrial during the cross examination of Dennis Broecker, a witness called on behalf of the appellant. During the cross examination the prosecuting attorney stated, "You doubt it. So you know for a fact then that you haven't talked to him since he's been back over there in the jail this time, is that correct?" The person referred to in the question was the appellant. After hearing argument out of the presence of the jury the trial court denied the motion for mistrial. Prior to trial the court had granted appellant's motion in limine directing the State to make "no mention of any other arrest, conviction or in-

carceration of this defendant." It is the position of the appellant that the State, by the question objected to, was attempting to violate this order in limine. On direct examination of this witness, the appellant had asked him if he was in the Vanderburgh County jail in November and December of 1973, to which he answered in the affirmative. Appellant then asked him if he had an occasion to come in contact with Jerry McFarland at that time, to which he answered yes. When asked how that came about, he said that McFarland was brought into the jail on the murder charge and that he was placed in the same cell with him for about three months. After relating conversations with McFarland while they were both incarcerated, the witness then alluded to a later conversation taking place between them at the jail. On cross examination he was asked if he had ever talked to the appellant, John Holland. His reply was that it was five or six years ago. It was then the question was asked to which the appellant now objects.

When taken in context with the entire series of questions, it is obvious the prosecutor was referring to the times of incarceration and the persons incarcerated concerning the murder for which the appellant was being tried. Although it is unfortunate in view of the order in limine that the prosecuting attorney used the precise language he used in the questioning, we do not view the transgression as of such a moment as to require reversal of the case. The appellant was obviously in custody under the murder charge and was being tried before the jury. There is no specific reference in the question to a prior incarceration. There is nothing in the question from which the jury could conclude that the appellant had any criminal record other than the charge for which he was being tried at that time. We hold that although the choice of words in the question is unfortunate, it does not constitute reversible error in this case. See *Whitten* v. *State,* (1975) 263 Ind. 407, 333 N.E.2d 86, 48 Ind. Dec. 463.

Appellant next claims the trial court erred in striking an

answer during the direct examination of Anthony Cates, a witness called on behalf of the appellant. The witness was asked the question, "How widely known was the reputation of Pat Strickland in this community for violence?" His answer to that question was, "I have seen the man cut a man before." The trial court sustained the State's motion to strike the answer as not being responsive to the question. Appellant now claims this was reversible error because the right to insist that an answer be responsive is the right of the questioner and does not extend to the antagonist. Appellant is correct in this observation. However, we see no reversible error in this instant. The witness had just testified that the decedent had killed a man at the Hub Bar and had bragged about it. Nothing was added by his statement that the decedent had cut a man before. The trial court did not strike any response to the question concerning how widely known the reputation of the decedent was in the community. We, therefore, hold there was no reversible error in this ruling by the trial court.

Appellant next claims the trial court erred in refusing to give his tendered instructions numbered 1, 6, 9 and 10. Appellant's instruction number 1 in substance stated that if there was a conflict in the evidence from which they could not determine guilt or innocence, that they should give the benefit of the doubt to the appellant. This same statement of law was contained in the court's instruction number 6, which was given. Appellant's instruction number 4, which was given by the trial court, contained essentially the same proposition of law. Appellant's instruction number 6, which was refused, was an instruction on self defense. Appellant's instructions numbered 5 and 7, which were given by the trial court, covered this same subject. It is not error for a trial court to refuse to give instructions covered by other instructions. *Martin* v. *State*, (1973) 260 Ind. 490, 296 N.E.2d 793, 36 Ind. Dec. 657. Appellant's instructions numbered 9 and 10 in substance stated that if the jury found appellant had abandoned his

plan to rob the decedent before he arrived at the apartment then he could not be found guilty of murder while in the perpetration of a robbery. He relies upon the testimony of Miss Poggioli, who testified that on the way to the apartment appellant stated that if they did not get her money they would just leave; that there would not be a robbery. However, the evidence of what occurred after appellant arrived at decedent's apartment overcomes any question of abandonment. The trial court was not bound to instruct the jury on a matter which was not in evidence in the case. *Martin* v. *State, supra.* The mere fact the appellant had stated to Miss Poggioli that he was not going to rob the decedent after specifically planning to do so does not raise a question of abandonment which would require the trial judge to give an instruction. This is especially true when the evidence supports a jury finding that immediately after making such a statement, appellant went to the apartment and committed the robbery.

Appellant next claims the trial court erred in giving State's instructions numbered 1, 5 and 11. State's instruction number 1 is a correct statement on the issue of self defense raised by the appellant. We see no error in giving that instruction. State's instruction number 5 admonished the jury to be fair to both sides and to discharge their solemn duty as jurors, setting aside sympathy and sentiment and looking alone to the law and the evidence in the case. Appellant objected to this instruction on the ground that it emphasizes the duty of the jury to convict. We do not so read the instruction. Instruction number 5 is a correct statement of the law and was properly given by the trial court. State's instruction number 11 is an instruction concerning the responsibility of persons who aid or abet in the commission of a felony. Appellant objected to this instruction on the ground that this was not the theory of the case, that if the appellant was in fact guilty he was the principal involved and that the accessories to the crime had already been convicted and had testified against him. It is his claim that such an instruction was misleading

and confusing to the jury. While we are at a loss to see why an instruction on an accessory to the crime was given, we hold that the giving of such an instruction was not reversible error. If the presence of this instruction confused the jury at all it would confuse them to think that possibly appellant was an accessory rather than the principal actor in the crime. Such confusion would hardly work to his detriment. We, therefore, hold that although the instruction was technically improper its presence in the list of instructions did not constitute reversible error in this case.

Appellant next claims the trial court erred in giving its instruction number 14, one of the instructions on the forms of verdict to be rendered by the jury. It is appellant's contention that since the forms of verdict included both murder and murder in the perpetration of a robbery and since only one homicide had occurred, that he was therefore prejudiced that the jury might be persuaded or tempted to compromise its verdict and to expose the appellant to two possible convictions. He further objects to instruction number 14 on the ground that it did not contain the included offense of robbery. Appellant relies on the case of *Sullivan* v. *State*, (1957) 236 Ind. 446, 139 N.E.2d 893, for the point that the lesser included offense of robbery should have been submitted to the jury in the verdict forms. However, in the *Sullivan* case the appellant did tender such an instruction. In the case at bar the appellant tendered no instruction concerning the lesser included offense of robbery. He, therefore, cannot be heard now to raise the question that such an instruction should have been given. *Barker* v. *State*, (1958) 238 Ind. 271, 150 N.E.2d 680. As to appellant's complaint that the trial court should not have instructed on both murder and murder in the commission of a felony, this Court has previously held that it is proper to charge both crimes and to instruct on such charge. Error, however, occurs when the trial judge purports to sentence an appellant on both charges growing out of a single homicide. *Thompson* v. *State*, (1972) 259 Ind. 587, 290 N.E.2d 724, 34 Ind. Dec. 335, *supra*.

Appellant next claims the verdict of the jury is not supported by sufficient evidence. In this he claims the evidence clearly shows that the appellant acted in self defense. We do not so interpret the evidence. Although appellant presented evidence which brought the issue of self defense before the jury, there was also evidence to the contrary, as above recited, upon which the jury could rest its verdict of guilty. This Court will not invade the province of a jury and weigh the evidence. *Matthew* v. *State,* (1975) 263 Ind. 672, 337 N.E.2d 821, 50 Ind. Dec. 54. We therefore hold there is ample evidence in this record to support the verdict of the jury.

Lastly, the appellant claims the trial court erred in sentencing him on both the murder charge and the murder in the perpetration of a felony, citing *Thompson* v. *State,* (1972) 259 Ind. 587, 290 N.E.2d 724, 34 Ind. Dec. 335, *supra.* We agree with appellant's contention in this regard. Inasmuch as the charged offenses arose out of the same homicide, the trial court should have imposed a sentence on the greater offense only. Appellant also raises the question that the trial court ordered the sentence to begin *in futuro.* This also was incorrect. *Miller* v. *Allen,* (1858) 11 Ind. 389; *Stuck* v. *State,* (1972) 259 Ind. 291, 286 N.E.2d 652, 32 Ind. Dec. 425; *Franks* v. *State,* (1975) 262 Ind. 649, 323 N.E.2d 221, 45 Ind. Dec. 618. To the extent the cases of *Weatherford* v. *State,* (1975) Ind. App., 328 N.E.2d 756, 47 Ind. Dec. 179, and *Alford* v. *State,* (1973) 155 Ind. App. 592, 294 N.E.2d 168, 35 Ind. Dec. 588, hold to the contrary, they are overruled.

The trial court is therefore directed to vacate the judgment and sentence on count I, murder in the second degree, to which appellant was sentenced to not less than fifteen nor more than twenty-five years. The trial court is also directed to correct the sentence on count II, life imprisonment, to begin as of the date of sentence, to-wit: the 30th day of April, 1975. The judgment of the trial court is otherwise in all things affirmed.

Arterburn, DeBruler and Prentice, JJ., concur; Hunter, J., concurs in result.

NOTE.—Reported at 352 N.E.2d 752.