ROBERT MICHAEL TAYLOR *v.* STATE OF INDIANA.

[No. 3-675A107. Filed December 16, 1976. Rehearing denied February 2, 1977. Transfer denied July 20, 1977.]

*Fergus M. Kear, Peebles, Kear & Rogers,* of Fort Wayne, *Thomas L. Ryan, Wyss, Mochamer, Roby, Ryan, Myers & Raff,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *John R. O'Bryan,* Deputy Attorney General, for appellee.

GARRARD, J.—Appellant Taylor was convicted of delivering a controlled substance, cocaine, and was sentenced to a determinate term of five years. He challenges the sufficiency of the evidence, a limitation imposed on cross-examination of a police officer, and the timeliness of the sentencing procedure. We affirm.

## I. Sufficiency of Evidence

The evidence favorable to the state discloses that on February 26, 1974, Taylor offered to sell cocaine to a police informant. The informant reported the offer to the police and a controlled purchase was arranged. On February 28 the informer and Police Officer Silva went to Taylor's residence. When they were admitted, they asked if Taylor had any cocaine. He replied affirmatively, and went to his refrigerator where he secured two tinfoil wrapped packets. The informant gave Taylor twenty dollars and took the two packets. Subsequent analysis revealed their contents to be cocaine.

In attacking the evidence, Taylor points to several inconsistencies developed at trial between the accounts given by Silva and the informant. While these conflicts relate to collateral matters, Taylor argues that they render the state's case so unsatisfactory as to create a reasonable doubt of Taylor's guilt as a matter of law. We disagree. The incidental inconsistencies did not render the state's evidence wholly unbelievable. Accordingly, while the conflicts serve as a basis for attacking the credibility of the witnesses and the weight to be given their testimony, the resolution of the question was for the jury. We may not now reweigh the evidence. *Turner* v. *State* (1972), 259 Ind. 344, 287 N.E.2d 339.

## II. Limitation on Cross-Examination

At trial, Officer Silva was subjected to vigorous cross-examination regarding the nature of the neighborhood surrounding Taylor's residence. Taylor was permitted to elicit from Silva a description of the street for two blocks north of Taylor's house; a statement that a street intersected defendant's street to the south of Taylor's house and a description of that street; a statement that Silva could recall no large billboards to the south of Taylor's house; a further description of the street which supposedly intersected south of Taylor's

house; a statement that Silva recalled no traffic signs at the intersection; and, finally, a display of Silva's confusion when told that the street upon which Taylor lived came to a dead end slightly south of Taylor's residence. The state then objected to further questioning along this line and was sustained. Later, the court sustained a question positing the existence of the billboard. The court permitted questions which demonstrated that Silva could not recall upon which side of the street Taylor's house was located, but sustained an objection when Silva was asked to again describe the street to the north of Taylor's house.

Taylor argues that the court committed reversible error in limiting the cross-examination of Silva. He correctly asserts that upon cross-examination he is entitled to probe the credibility of the witness, and that in so doing he is not limited to the facts testified to on direct examination. *Ray* v. *State* (1950), 228 Ind. 706, 95 N.E.2d 212.

Nevertheless, the trial court is invested with broad discretion in controlling cross-examination. We will not find reversible error unless there is a manifest abuse of that discretion. *Franks* v. *State* (1975), 262 Ind. 649, 323 N.E.2d 221; *Traylor* v. *State* (1975), 164 Ind. App. 50, 326 N.E.2d 614.

Here the court permitted Taylor to establish for the jury Silva's faulty memory of the neighborhood. Taylor presented the results of Silva's confusion in an effective fashion in final argument. We find no manifest abuse of discretion in the limitations imposed by the court's rulings which precluded questions which were essentially repetitious at that point in the examination. *See, Merry* v. *State* (1975), 166 Ind. App. 199, 335 N.E.2d 249.

### III. Improper Sentencing

The jury returned its verdict on July 25, 1974, and the court entered a judgment of conviction the same day. A presentence investigation was ordered with the report to be filed July 31, 1974. On July 31, Taylor appeared in court, but his counsel was absent due to illness. The court advised Taylor of his right to appeal, and the procedure for perfecting an appeal, but no other proceedings were had on that day. The presentence investigation report was filed August 22. On September 23, 1974, Taylor filed a motion to dismiss and set aside the conviction. On October 11, the court denied Taylor's motion and imposed sentence. The court entered the sentence as a *nunc pro tunc* entry, apparently as of the date of conviction.

Taylor asserts that the failure of the court to sentence him within thirty days after the verdict of guilty is a violation of Indiana Rules of Procedure, Criminal Rule 11 and requires that he be discharged.

We first point out that the date of Taylor's sentencing was October 11, 1974. The purported *nunc pro tunc* was of no effect. While such an entry can be made to enable the court's records to speak the truth as to what previously occurred, it cannot supply an action which was not in fact taken. *Perkins* v. *Hayward* (1892), 132 Ind. 95, 31 N.E. 670; *Smith* v. *State* (1880), 71 Ind. 250.

Criminal Rule 11 provides in part:

"In all courts of superior jurisdiction having general jurisdiction to try felony charges, the trial court shall sentence a defendant convicted in a criminal case on a plea of not guilty within thirty days of the finding or verdict of guilty."

The rule then continues by specifying what the court should advise a defendant regarding rights of appeal and concludes with the requirement that a record be made of the entire proceeding.

Unlike the provisions of CR. 4, the rule does *not* call for the discharge of a defendant where the time limits prescribed are not met. As the court stated in *Alford* v. *State* (1973), 155 Ind. App. 592, 294 N.E.2d 168, operation of the rule does not affect the guilt determining process and does not involve an accrued's constitutional right to speedy trial.

A number of decisions have considered this portion of CR. 11 since its adoption. However, none have directly examined the remedy if the rule is found to have been violated. It has been recognized that the court is excused from exact compliance where there was "good cause" for the delay. *See, Alford, supra; Arnold* v. *State* (1973), 157 Ind. App. 359, 300 N.E.2d 135. Such cause may be presumed where the record is silent as to the reason for delay and the defendant made no objection. *Moore* v. *State* (1972), 154 Ind. App. 482, 290 N.E.2d 472. Furthermore, if the defendant sought the delay he may not complain. *Moore, supra; Stiles* v. *State* (1973), 156 Ind. App. 675, 298 N.E.2d 466. Nor may he complain if the court set a sentencing date beyond the thirty-day limit and the defendant made no objection. *Stout* v. *State* (1974), 262 Ind. 538, 319 N.E.2d 123. However, the court in *Stout* was careful to point out that it was not holding, nor did the opinion in *Arnold* stand for the proposition, that the burden is on a defendant to procure sentencing so that he may be said to waive any delay unless he has requested compliance with the rule. In other words, *Stout* makes clear that it is the duty of the court to impose sentence in a timely fashion.

But what is to be the remedy if the court simply without "good cause" neglects to sentence a defendant until the thirty-day period has expired and the defendant did nothing to procure the delay?

Since violation of the prompt sentencing requirement is wholly collateral to the guilt finding process, no purpose is served by the grant of a new trial. Since the error concerns

only the promptness of the court's action, the case cannot be remanded with instructions to correct the error. It appears there are two potential remedies.[1]

One is to permit the defendant to compel the court to discharge its responsibility without further delay. In cases where the sentence is mandatory this would work no disadvantage upon the defendant. It would fulfill the purpose of the rule enunciated in *State ex rel. Stiles* v. *Hendricks Cir. Ct.* (1972), 258 Ind. 318, 281 N.E.2d 89, to expedite the early appeal and final disposition of the case. Furthermore, if initiated by motion to pronounce sentence addressed to the trial court, we do not believe the remedy would be calculated to substantially prejudice the defendant in those cases where sentencing latitude exists. It would *not* alter the duty of the court to comply with the rule and promptly sentence defendants without the necessity of their requesting the court to act.

The other alternative is to require that the defendant be discharged since a new trial would serve no useful purpose. It appears to us that the impact of this choice is out of proportion to the evil sought to be corrected. It would permit one accused and properly found guilty of committing a crime to escape any penalty for his offense although his constitutional rights were fully adhered to and his only injury consists of the delay which actually occurs. Nevertheless, Taylor

---

1. The dissent suggests appellate revision of the sentence as a third alternative. To date our Supreme Court has declined to utilize the primary revision power granted it under Art. 7, § 4 of the Indiana Constitution until a comprehensive program of policies and procedures is adopted. *Critchlow* v. *State* (1976), 264 Ind. 458, 346 N.E.2d 591; *Koonce* v. *State* (1975), 263 Ind. 5, 323 N.E.2d 219. It would appear that our authority under Art. 7, § 6 is subject to the same restraint. *See, Thomas* v. *State* (1976), 264 Ind. 581, 348 N.E.2d 4; *Gray* v. *State* (1974), 159 Ind. App. 200, 305 N.E.2d 886 (White's concurrence).

It further appears to this writer that the revision alternative must be grounded on this constitutional expansion of appellate review rather than on our inherent power to revise sentences which exceed other constitutional limitations, since the defendant would receive credit for any incarceration. If he were not incarcerated, the prejudice resulting would not reach constitutional proportions in the absence of extraordinary or deliberate delay as discussed, *infra.*

urges this is the mandate of a line of decisions construing our prior statutory law.[2]

Of these cases discussing the duty of the court to promptly impose sentence, only two have found discharge to be the appropriate remedy.

In *Smith* v. *State* (1919), 188 Ind. 64, 121 N.E. 829, a grand jury had returned two indictments against the defendant. On March 19, 1917, the defendant entered guilty pleas to each indictment. The court imposed a fine of $250 and sentenced the defendant to three months at the state farm on the first plea. The fine was paid, the defendant served his sentence and was discharged on August 22, 1917. Then on January 10, 1918, the court ordered the defendant to appear for sentencing on the second indictment to which he had pleaded guilty. While acknowledging that sentencing could be temporarily deferred "for cause shown," the court held that sentencing could not be indefinitely postponed and ordered the defendant discharged. It quoted with approval from *In re Flint* (1903), 25 Utah 338, 71 P. 531,

> "But we know of no rule or principle of law whereby a court can indefinitely suspend sentence, keep the defendant in a state of suspense and uncertainty, and, long after he has been discharged from custody, have him rearrested, and impose a sentence of either fine or imprisonment on him."

In *Warner* v. *State* (1924), 194 Ind. 426, 143 N.E. 288, another guilty plea case,[3] the plea was entered April 8, 1921. The defendant was released on recognizance and nothing further occurred until October 2, 1922, some eighteen months after entry of the plea, when the defendant was brought before the court and sentenced. Again the Supreme Court

2. The statute, Acts 1905, Ch. 169, § 290 [Burns § 9-2201, 1956 Repl.] merely provided:
"After a finding or verdict of guilty, against the defendant, if a new trial be not granted, or the judgment be not arrested, the court must pronounce judgment."
3. The original order book entry recited trial by the court. The first portion of the opinion is addressed to the propriety of the court correcting the record to reflect the guilty plea.

held that the defendant was entitled to discharge due to the lapse of time before the sentence was imposed, and stated,

". . . [T]he rule is well settled that it is the duty of the court upon a plea of guilty or upon a finding or verdict of guilty, to impose sentence at that time unless there is reasonable excuse for delay, which delay must be for a time certain for a definite recognized legal purpose, and that an *indefinite postponement* of rendering judgment or pronouncing sentence will deprive the court of jurisdiction of the person of the defendant, from which it follows that a subsequent sentence is void." (Emphasis added) 194 Ind. at 431.

Subsequent decisions either found cause for delay or determined the defendant had waived any objection to the delay. *See, e.g., Stevens* v. *State* (1949), 227 Ind. 417, 86 N.E.2d 84; *Headlee* v. *State* (1929), 201 Ind. 545, 168 N.E.2d 692, *reh. den.* 201 Ind. 545, 170 N.E. 433; *Varish* v. *State* (1928), 200 Ind. 358, 163 N.E. 513.

It thus appears from the facts of the decisions that discharge has been found to be an appropriate remedy for delay in sentencing only where extraordinary delay is involved. The doctrine involves the notion that the court may not deliberately or inadvertently refuse to pronounce sentence and thereby impose a *de facto* probation which is not subject to the mandates of the legislature. In current legal parlance the concept is very close to our interpretations of due process. Such an analysis is reinforced by the following: Both *Smith* and *Warner* cite as applicable authority the decision in *Smith* v. *Hess* (1884), 91 Ind. 424, which held the court had no authority to permit a convicted defendant to depart without any sentence but subject to arrest in case he did not behave well in the future. In *McLaughlin* v. *State* (1934), 207 Ind. 484, 192 N.E. 753, the court held that the power of the court to delay sentencing "for a time certain" did *not* mean to a fixed date. The implication is that the court could properly impose sentence even after some delay so long as the record disclosed that the court

was not intending to delay indefinitely *i.e.*, to impose a *de facto* probation. In *Stevens* v. *State* (1949), 227 Ind. 417, 86 N.E.2d 84, although affirming the decision, the court had quoted the portion of *Warner* we have quoted herein. In *Smeltzer* v. *State* (1962), 243 Ind. 437, 185 N.E.2d 428, the court again affirmed an imposition of sentence and characterized the statement in *Stevens* as *dictum* and a misstatement of the holding in *Smith* v. *State, supra*. With respect to the *Warner* case the court said,

> ". . . [T]he decision in that case was based upon the fact that a court has not the inherent power, nor is it authorized by statute, to *indefinitely* suspend passing sentence." 243 Ind. at 442-3, 185 N.E.2d at 431.

The court concluded by observing with regard to the delay in sentencing Smeltzer,

> "It did not constitute an indefinite *postponement* or suspension of sentence, within the term as used in any of the cases which have come to our attention." 243 Ind. at 445, 185 N.E.2d at 432.

From the foregoing we conclude that the availability of discharge for a person found guilty of a criminal offense but not promptly sentenced is limited to circumstances where the record discloses a deliberate attempt upon the part of the court to withhold sentence[4] or where the facts disclose a delay in the imposition of sentence without excuse or justification for such a period of time as to offend basic notions of fundamental fairness if the court were to then impose sentence.

Taylor's case does not fall within this category. His remedy for the court's failure to comply with CR. 11 was to secure the imposition of sentence. When he brought the issue to the court's attention by his motion of September 23, 1974, the court promptly corrected its error. There is no error on appeal.

---

4. In *Smith* v. *Hess, supra,* the docket entry read "judgment withheld."

## IV.  Errors Waived

Taylor also attempts to assign error for the failure of the court to permit him to present evidence in support of a plea for a suspended sentence and for the failure of the court to state reasons for the sentence imposed. The latter assignment was not contained in the motion to correct errors. The former is not borne out by the record. Taylor was asked if there was anything he wanted to say. He responded, "Not at this time, sir." He did not offer to present any other evidence at the sentencing. Neither argument is viable for appeal.

Affirmed.

Hoffman, J., concurs; Staton, P.J., dissents and files separate opinion.

### DISSENTING OPINION

STATON, P.J.—I dissent from the majority opinion, since its reasoning is specious. First, the majority opinion assumes that there are only two potential remedies: (1) "To permit the defendant to compel the court to discharge its responsibility without further delay."; and (2) "To require that the defendant be discharged since a new trial would serve no useful purpose."

The first remedy, compelling the court to discharge its sentencing responsibility, has been accomplished. To compel the court to resentence Taylor would accomplish nothing. Furthermore, a resentencing would further aggravate the first delay in sentencing which extended Taylor's sentence by seventy-two days. The majority opinion assumes that remedy (1) would be proper "in those cases where sentencing latitude exists." Taylor was sentenced to a determinate term of five (5) years. No latitude exists.

The second remedy, discharge, is not necessary. Under Article 7, § 6 of the Indiana Constitution, the Court of Appeals is given the authority to review and revise sentences. Taylor's sentence has been extended by seventy-two days, since the

trial court failed to comply with Criminal Rule 11 without good cause.

A third remedy would be to reduce Taylor's sentence by seventy-two days. This remedy, which is available under the Indiana Constitution would avoid any question of due process of law and the disproportionate relief of total discharge.[1]

I further dissent from the rationale of the majority opinion which gives the trial court a license to extend the thirty day limitation under CR. 11. The majority's rationale concludes that discharge is available only when the trial court deliberately withholds sentence, or where the trial court withholds sentencing without good cause "for such a period of time as to offend basic notions of fundamental fairness. . . ." CR. 11 does not give the trial court any license to delay sentencing beyond thirty days from the verdict without good cause. *Alford* v. *State* (1973), 155 Ind. App. 592, 294 N.E.2d 168.[2] Whether there is an indefinite delay in sentencing or a seventy-two day delay of sentencing without good cause makes little difference in the trial court's position under CR. 11. None of the cases cited by the majority opinion can be considered stepping stones for an interpretation of CR. 11 which was adopted in 1970. (The oldest case cited is *Smith* v. *Hess* (1884), 91 Ind. 424, and the latest case cited in the

---

1. I do not agree with footnote one (1) of the majority's opinion. Any exercise of Constitutional revisionary power in Article 7, § 6 by the Court of Appeals may be reviewed by the Supreme Court of Indiana. If the Indiana Supreme Court concludes that the exercise of constitutional revisionary power has gone too far or beyond good policy considerations, it can revise the sentence again to conform with its policies. The present policy of the Indiana Supreme Court under Criminal Rule 11 is that the defendant shall be sentenced within thirty days from the verdict. The Court of Appeals should take the necessary action to comply with the rule where the trial court has violated the rule. The standard of justice should remain inviolate.

2. Since the case has not yet been indexed in SHEPHERD'S INDIANA CITATIONS, I would note that *Alford* v. *State* (1973), 155 Ind. App. 592, 294 N.E.2d 168 was overruled *to the extent that the holding therein* conflicts with the Indiana Supreme Court decision of *Holland* v. *State* (1976), 265 Ind. 216, 352 N.E.2d 752. The **Holland** decision focused on *in futuro* sentencing grounds, and the facts differed substantively from *Alford*, so the *Holland* holding does not negate *Alford* as authority herein.

majority's rationale is *Smeltzer* v. *State* (1962), 243 Ind. 437, 185 N.E.2d 428.).

My rationale is that CR. 11 is mandatory. It is mandatory by its own terms. It provides that the ". . . trial court shall sentence a defendant . . . within thirty [30] days of the finding or verdict of guilty." In the absence of good cause or a waiver on the part of the criminal defendant, the trial court must comply with the rule. CR. 11 is a standard of justice which may only be changed by the Indiana Supreme Court. Where there is any deviation from this rule by the trial court as in the present case, extending Taylor's punishment seventy-two days beyond the statutory penalty, the sentencing must be corrected to conform with the rule. Fortunately, the Indiana Constitution, Article 7, § 6, authorizes this Court to review and revise sentences to conform with justice and due process of law. Therefore, I would reduce Taylor's sentence by seventy-two days. This reduction of sentence would have the effect of reverting the time of sentencing from October 11 to July 31, which is exactly what the trial court attempted to do by its *"nunc pro tunc entry"*.

NOTE.—Reported at 358 N.E.2d 167.

