DUNKLE *v.* STATE OF INDIANA.

[No. 29,959.  Filed April 6, 1961.]

*Curtis W. Roll,* of Kokomo, for appellant.

*Edwin K. Steers,* Attorney General, and *Patrick D. Sullivan,* Deputy Attorney General, for appellee.

ACHOR, J.—This is an appeal from a judgment of the trial court finding appellant guilty under two separate counts. The first is that of drawing a dangerous weapon, under Acts 1905, ch. 169, §448, p. 584 [§10-4707, Burns' 1956 Repl.]. Under count two, appellant was charged with aiming or pointing a deadly weapon, in violation of §452 of the Acts, *supra* [§10-4708]. The appellant was fined $500 and sentenced to 90 days in

the county jail under count one, and fined in the sum of $500 under count two.

The facts, insofar as here are pertinent, may be summarized as follows:

On June 22, 1959, a deputy sheriff by the name of Plummer, of Howard County, made a visit to appellant's home in Kokomo, Indiana, for the purpose of serving a legal document. At that time appellant refused service and ordered Plummer off his property. A short time later, Plummer returned to appellant's home with another deputy sheriff named Scott. Scott and Plummer proceeded up the front steps toward appellant's front door and when they reached the first two or three steps, appellant opened the inner door and, while standing "about six inches" from the screen door, shouted to the deputies to "get off" his property. The deputies continued two or three more steps, at which time deputy Plummer noticed that appellant had a gun in his hand. At this point, Plummer shouted to Scott: "Look out, he's got a gun," whereupon Plummer jumped to the side and pulled out his revolver. Scott continued up the stairs onto the porch and to the left of the screen door. Deputy Scott testified that appellant, without moving, pointed the gun "right at my face." Scott then read the context of the legal document to appellant and laid the document on the porch, as appellant refused to accept it. Scott and Plummer then left appellant's premises.

The sole error relied upon for reversal is predicated upon the court's action in overruling the appellant's motion for a new trial.

The appellant contends that the verdict of the jury is not sustained by sufficient evidence and is contrary to law because: (1) The decision of the trial court is

not sustained by sufficient evidence; (2) that the decision of the trial court is contrary to law.

To support his argument that the decision is contrary to law, appellant asserts that he is being convicted twice for the same offense, thereby violating his constitutional protection against double jeopardy. Appellant contends that §448 of the Acts, *supra* [§10-4707], making it a crime to *draw* a deadly or dangerous weapon, has the same substantive meaning as §452 of the Acts [§10-4708], *supra,* making it a crime to *point or aim* a gun, or other firearm, at or toward any other person. In support of this position, appellant argues that it is not possible to draw a gun within the purview of the statute without also pointing or aiming it.

The recognized test, in determining the identity in similar crimes charged, is the difference or the lack of difference in the evidence necessary to establish one particular crime as compared with that required to establish the other crime. *Blockburger* v. *United States* (1931), 284 U. S. 299, 304, 76 L. Ed. 306; *Gillenwaters* v. *Biddle,* 18 F. 2d 206, 208 (C. C. A. 8th Circ. 1927).

Although there are statutes and cases in other states which treat the drawing and aiming of a gun as a single offense, we think this position untenable and completely contrary to the clear intent of the act of the legislature in this state. This conclusion is based upon several well established rules of statutory construction, as well as upon the definition of the terms used.

*One:* Both §§448 and 452 of the Acts of 1905 [§§10-4707 and 10-4708], *supra,* here in question, were passed by the same legislature on identical dates. Under these circumstances an assumption is raised that the legislature intended that the drawing of a weapon under one section of the act and the pointing

a weapon under another section of the same act should constitute separate and distinct offenses.[1]

*Two:* It is a well established rule of statutory construction that statutes will be interpreted so as to give efficient operation to the expressed intent and to *all sections* of the acts of the legislature, if reasonably possible. *Short* v. *State* (1954), 234 Ind. 17, 122 N. E. 2d 82; 3 Sutherland, *Statutory Construction,* §5606 (3rd Ed. 1943).

*Three:* Section 448 [§10-4707], *supra,* makes it unlawful to draw any "pistol, dirk, knife, slung-shot or other deadly or dangerous weapon . . . upon any person." Under the doctrine of *ejusdem generis,* the term "other deadly or dangerous weapon" will be construed as applicable to words of the same general nature or class as those enumerated.

The specific weapons listed in §448 [§10-4707], *supra,* are of such nature they are commonly carried within a holster, sheath, pocket or other small enclosure upon a person. Therefore, it may be inferred that the legislature by specifically referring to the drawing of weapons of the character enumerated had in mind the *act by which the particular weapon is taken out of or removed for use,* from the enclosure which contained it.

*Four:* We next examine the accepted usage of the terminology used in the respective sections of the statutes to determine whether the offenses stated are com-

---

1. ". . . where two acts relating to the same subject matter are passed at the same legislative session, there is a strong presumption against implied repeal, and they are to be construed together, if possible, so as to reconcile them. . . ." 82 C. J. S., *Statutes,* §297 at p. 507 (1953).

patible as separate offenses. The words "draw"[2] and "point"[3] or "aim"[4] are distinguishable in their accepted definitions, although they have sometimes been used synonymously.

The appellant cites the case of *Siberry* v. *The State* (1895), 149 Ind. 684, 39 N. E. 936, 47 N. E. 458, as precedent for his position that to draw means the same as to point. He quotes following language from page 698 of that case:

> "To draw a weapon upon another means within the purview of that statute so to draw it that it may be used to his injury, as to point the muzzle of a gun or revolver at another; but it is not necessary that he intend to discharge or fire it off or shoot the person in order to constitute the violation of the statute quoted."

It is to be noted, however, that this court did not in the Siberry case, *supra,* purport to make any distinction between the statutes which we are here called upon to construe, and, as we have observed above, under circumstances where such a distinction is not an issue the terms *drawing* and *pointing* or *aiming* are sometimes used synonymously. For this reason the Siberry case is not controlling of the issue here presented. Our conclusion then is that to draw a weapon within the purview of §448 [§10-4707], *supra,* is a separate and distinct offense from that of pointing

---

2. *Draw.* "To cause to come out; to extract; to educe; to bring forth; as: (a) To bring or take out, or to let out, from some receptacle, as a stick or post from a hole, liquid from an opening, as of a cask, well, etc., a tooth from the jaw, etc.; specif., to take out (a weapon) from its sheath."

3. *Point.* "To direct (at, to, or upon); to aim, . . ."

4. *Aim.* "The pointing of a weapon, as a gun, a dart, or an arrow, at, or so as to bear upon, the object intended to be struck; the line of sighting; hence, the direction of anything, as a spear, a blow . . . toward a particular point or object, with a view to strike or affect it." Webster's New International Dictionary, Second Edition.

or aiming a weapon under §452 [§10-4708], *supra.* Appellant was not therefore twice convicted for but one offense, as he contends.

Appellant's other reason for reversal is that the judgment is not sustained by sufficient evidence. It is firmly established that this court will not weigh the evidence. If there is any competent evidence upon which the trial court based its decision, we cannot disturb that decision on appeal. Deputy Sheriff Scott testified that appellant pointed the gun directly at his face, and Deputy Plummer also testified that appellant was pointing the gun but due to his position in relation to that of appellant he could not say whether the gun was pointed at Scott or himself. Appellant contends that this testimony was incapable of belief because of the uncontradicted testimony that he was standing within about six inches of the screen door. This was a circumstance for the trier of the facts to consider but is not so incapable of belief as to require reversal by this court. There was sufficient evidence for the trial court to find appellant guilty of pointing or aiming a gun within §452 [§10-4708], *supra.*

However, there is absolutely no evidence that appellant drew the gun from a holster, sheath or other enclosure prior to aiming it. The only evidence on the subject was from appellant who testified that he picked the "rifle" up from its resting position against the front door. It is not alleged that appellant threatened "to use, any . . . weapon, already drawn upon any other person," which is made an offense under the same section of the statute [§10-4707, *supra*].

Therefore, finding no evidence to sustain the conviction under §448 [§10-4707], *supra,* the decision of the trial court is reversed as to count one, and affirmed as to count two.

Bobbitt, C. J., Arterburn and Landis, JJ., concur.
Jackson, J., dissents.

NOTE.—Reported in 173 N. E. 2d 657.