**Frank Bernard JAMES, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 180S7.**

Supreme Court of Indiana.

Oct. 28, 1980.

James E. Daugherty, Merrillville, for appellant.

Theo. L. Sendak, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant, Frank Bernard James, was charged with having committed Murder, Murder in the Perpetration of a Robbery, and Murder in the Perpetration of a Kidnapping, Ind.Code § 35–42–1–1 (1978 Supp.). He was convicted of each of the offenses after trial by jury. The trial court sentenced the defendant to sixty years on each of the three offenses, which sentences were to run concurrently. We note at the outset of our consideration of this appeal that this cause involves the homicide of one individual. Therefore, the trial court could not impose sentence on three counts of murder. *Pointon v. State,* (1980) Ind., 408 N.E.2d 1255; *Franks v. State,* (1975) 262 Ind. 649, 323 N.E.2d 221. We remand this cause with instructions to vacate the judgments and sentences for Murder under Count II, Murder in the Perpetration of a Robbery, and Murder under Count III, Murder in the Perpetration of a Kidnapping.

Appellant raises four issues in his appeal, which involve the admission of exhibits, the refusal to allow testimony of a prospective witness, the allowing of rebuttal testimony, and the sufficiency of the evidence.

On Labor Day, September 4, 1978, Leon Strenski loaded his personal belongings into a company car recently assigned to him and left his parents' home in Chicago about 2:30

p. m., to drive to Indianapolis to begin a new job. His girlfriend helped him to load the car. He took various items including a guitar, a cassette recorder, a watch, a camera and clothing. The car was a two–door 1978 dark blue Mercury. Leon Strenski was wearing a long sleeved white shirt, tan Levi pants, and a belt with a distinctive buckle.

On September 4, appellant James was at the Hub Lounge. He, Arthur Samuels, Leroy Brundige and Sally Koto drove to Chicago and purchased drugs. Frank James lost his wallet out of the car window and they stopped the car. James left the car to find his wallet and Sally Koto, who was driving, left the appellant on the expressway and returned to East Chicago.

Leon Strenski picked up Frank James, who was hitchhiking, in Lake County. Later Frank James picked up Marvin Austin between 3:00 and 5:00 p. m. at Austin's house. He asked Austin if he wanted to ride around and get high. Austin agreed to go with him and got into the dark blue 1978 car, which James said was his brother's car. Austin saw a brown suitcase, a guitar, a tape player, a blue jean jacket, a radio, and a suit, in the car. Austin told James he knew where James could sell the stuff. They drove to the Small Farms area of Gary. James said he heard a noise from the trunk. He said, "White boy, you better be cool back there." Austin asked James why he didn't let the guy go because he was nice enough to give him a ride, and James said "the man had seen his face." James stopped the car, got out carrying a carbine, and opened the trunk. Austin laid down in the seat because he did not want to be seen. After a couple of minutes he heard two or three shots. James returned to the car, stating that "the man was dead."

### I.

Appellant alleges that the trial court erred in allowing State's Exhibits Nos. 2 and 3 to be admitted into evidence. These exhibits were photographs taken at 3112 Wright Street, Gary, Indiana, on September 10, 1978, and depict the body of the victim Leon Strenski. Appellant claims that these photographs were gruesome and that they prejudiced him. He also claims that they were not relevant.

These photographs show the location and condition of the body when it was found. State's witness Willie Hearns, a deputy coroner, described the body as decomposed, and testified as to the location and time of discovery. Captain Phil Wleklinski also described the appearance of the body as being in a state of decomposition. He testified that maggots were over the head area and that the clothing was saturated with body fluids. There was testimony from Dr. Custodio, who performed the autopsy, that the body was in an advanced stage of decomposition and maggot infestation. He had difficulty determining race and finally did so through the use of hair samples. He discussed the difficulty of determining the cause of death due to the state of the body and described a fracture of the skull in which he found metallic fragments which appeared to be fragments of bullets. His conclusion was that the cause of death was a gunshot wound to the head which lacerated the brain.

 It is well settled that the admission of photographs over objections on these grounds is within the sound discretion of the trial court if they qualify under general rules of evidence and will not be disturbed unless the trial court abused its discretion. Here it was established that the photographs were a true and accurate representation of the things they were intended to portray. *Johnson v. State*, (1972) 258 Ind. 648, 283 N.E.2d 532. Witnesses were permitted to describe verbally those things which the photographs depicted. Therefore, such photographs were relevant. *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411. In addition, in this case the photographs were essential to the identification of the victim, since identification was also established by the clothing the victim was wearing due to the condition of the body. The clothing was identified by Strenski's mother and girlfriend. Therefore, such photographs were a true and

accurate representation of what they were intended to portray and were relevant. The trial court did not abuse its discretion in admitting these exhibits. *Chambers v. State*, (1979) Ind., 392 N.E.2d 1156.

## II.

Appellant next claims that the trial court erred in refusing to allow the testimony of a prospective witness, Corinthian Manley. Appellant James claims that Corinthian Manley would have testified that James was at a different location at the time of the killing thereby offering evidence of alibi for James. He claims that Corinthian Manley was never available for deposition and that Manley indicated that he would not testify, but later changed his mind.

■ Appellant admits that he filed no notice of intent to prove alibi as required by Ind.Code § 35–5–1–1 (Burns 1979 Repl.). Ind.Code § 35–5–1–3 (Burns 1979 Repl.) provides that if the alibi notice is not timely filed, the court shall, in the absence of a showing of good cause for such failure, exclude the evidence offered by the defendant to establish an alibi. Therefore, the court could have properly excluded all alibi evidence presented by the appellant. *Mitchell v. State*, (1980) Ind., 398 N.E.2d 1254; *Shelton v. State*, (1972) 259 Ind. 559, 290 N.E.2d 47. However, here the appellant was permitted to testify as to an alibi in spite of his failure to file the required notice. Rather than being prejudiced, he received consideration not contemplated by the statute. *Shelton, supra.* There is no error in the trial court's excluding testimony from the proposed witness, Manley.

## III.

Appellant next claims that the trial court erred in allowing rebuttal testimony of State's witness, Dr. Periolat, for the purpose of impeachment because it violated the appellant's doctor–patient privilege. Appellant had entered a plea of not guilty by reason of insanity. Dr. Periolat had examined him at court order and had interviewed him as a result of that plea. Appellant later withdrew his insanity plea.

Appellant testified that he had not talked to a Dr. Periolat. He also testified as to his activities on the day of the crime and over the Labor Day holiday week–end. Dr. Periolat was called to impeach the appellant's testimony insofar as when he had interviewed him, James had told Dr. Periolat that he was home with his family on the day of the crime, rather than with the persons he claimed in his testimony.

Dr. Periolat was called as a rebuttal witness and was asked if he had any conversations with James concerning his whereabouts on the date of the crime. He testified that James told him he was home with his family. On cross–examination he was questioned as to whether he specifically asked James a date or whether he had said "the day the crime was committed." Periolat said that he said the day the crime was committed, and did not say September 4. That was all the testimony given by Dr. Periolat.

■ It is doubtful that this testimony, which simply contradicted appellant's testimony that he had not spoken to Dr. Periolat and revealed that he had told a different version of his whereabouts on a particular date, which appellant attributed to his confusion about the dates, was information which violated the doctor--patient privilege. This conversation occurred because Dr. Periolat examined James because of his insanity plea rather than for purposes of treatment. In *Phelan v. State*, (1980) Ind., 406 N.E.2d 237 the admissibility of incriminating remarks made to a physician during a compulsory psychiatric examination were discussed. It was generally stated that if such remarks were offered to demonstrate the mental condition of the defendant then they should be admitted. If they were offered to demonstrate the guilt of the defendant, then they should not be admitted over proper objection. Here the testimony as set out above was offered to impeach the credibility of the defendant and does not appear to have been confidential information or advice given by the doctor in his professional relationship with the patient.

At the time of the psychiatric examination the defendant had waived his privilege by pleading insanity. Later, when this plea was withdrawn, the testimony was offered on rebuttal as impeachment of the defendant's own testimony. No proper and contemporaneous objection was made, and thus no right to assert an error has been preserved. *Phelan, supra.*

### IV.

Appellant's last allegation of error is his claim that the evidence was insufficient to establish every material element of the crimes charged beyond a reasonable doubt. In reviewing the sufficiency of the evidence, this Court will neither reweigh the evidence nor judge the credibility of witnesses. We will determine only whether there is substantial evidence of probative value from which the jury could reasonably find the appellant guilty beyond a reasonable doubt. *Love v. State*, (1979) Ind., 393 N.E.2d 178, 180; *Pollard v. State*, (1979) Ind., 388 N.E.2d 496, 501; *Ruetz v. State*, (1978) 268 Ind. 42, 49, 373 N.E.2d 152, 156.

The appellant challenges the evidence as being insufficient claiming that much of it is circumstantial and that he testified and gave a different version of his whereabouts. He testified that after he lost his wallet he hitchhiked and two black men picked him up and drove him to East Chicago. He testified that he went to Corinthian Manley's home and then to Manley's brother's home. He claims he then went to the home of his girlfriend and that he was asked to take merchandise to Louis Goshay's house. He testified that he did not steal any items and that he did not kill the victim.

In addition to the evidence set out earlier in this opinion, the body found at the abandoned house in Small Farms was identified by the clothing, including a belt, buckle, pants, shirt and shoes, by Leon Strenski's mother and girlfriend. Strenski's mother identified a guitar case and guitar, a tape recorder, wristwatch, shirts, and a camera as items belonging to her son. These items had been sold by James for drugs and money. Bernard Strenski, Leon Strenski's father, testified that his son was assigned a dark blue Mercury automobile by the Liberty Mutual Insurance Company and had been driving it. Derby Coleman saw appellant James set fire to a dark blue car on September 5, 1978. James told him that he had "killed a honky." The burned vehicle was identified as belonging to the Liberty Mutual Insurance Company.

The evidence revealed that James was driving Strenski's car with Strenski in the trunk when he picked up Austin. Strenski's personal belongings were in the car. Austin heard appellant open the trunk and later heard shots. James returned stating that he had killed the man. The body found at that location was identified as Strenski. There is substantial evidence of probative value to support the jury's finding that the appellant was guilty beyond a reasonable doubt.

This cause is remanded with instructions to vacate the judgments and sentences for Murder under Count II, Murder in the Perpetration of a Robbery, and Murder under Count III, Murder in the Perpetration of a Kidnapping. The judgment of the trial court in all other respects is affirmed.

All Justices concur.