Sherrell **RUSSELL**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9803–CR–224.

Court of Appeals of Indiana.

June 23, 1999.

Transfer Denied Aug. 25, 1999.

Teresa D. Harper, Bloomington, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

**OPINION**

FRIEDLANDER, Judge

Sherrel Russell was charged with Murder,[1] and Arson, a class A felony,[2] after her room-

---

1.  Ind.Code Ann. § 35–42–1–1 (West 1998).

2.  Ind.Code Ann. § 35–43–1–1 (West 1998).

mate, Nicole Dicken, died from injuries Dicken sustained when Russell set Dicken on fire at a gas station. The jury found Russell not guilty of murder but convicted Russell of Reckless Homicide, a class C felony,[3] as a lesser included offense of murder. The jury convicted Russell of arson, a class A felony. As restated, Russell presents one issue for review:

> Do Russell's convictions for (1) reckless homicide, by setting the victim on fire, and (2) arson, resulting in serious bodily injury, violate Indiana's existing double jeopardy analysis under Article I, § 14 of the Indiana Constitution, which is separate and distinct from the federal double jeopardy analysis, where the convictions incorporate the same injury to the same victim, thus requiring the class A felony arson conviction to be lowered to a class B felony?

The evidence discloses that, after an evening of consuming alcohol, Russell and Dicken stopped at a Bigfoot gas station on the southside of Indianapolis at approximately 3:00 a.m. on February 9, 1997. While at the gas station, Russell and Dicken were arguing.

Russell entered the station, ostensibly to pay for gas, while Dicken waited outside by the car in order to pump the gas. While inside, Russell told the cashier and others that she was afraid her roommate would take her money upon their return to their apartment and that she did not want the cashier to authorize operation of the pump. She said she did not want to pay for the gas since she was always expected to pay. Russell opened the door and continued the argument by shouting at Dicken. Dicken entered the station and spoke to Russell. As the two walked out of the station, Russell told the manager to authorize operation of the pump and that everything was "okay."

At the pump, the two engaged in an altercation. At one point Dicken pushed Russell to the ground. Dicken told Russell to get in

the car. Russell took an object from her jacket pocket and reached toward the gas pump handle. Liquid splashed onto Dicken's arms and chest. A fire started in front of Russell and engulfed Dicken. Passersby stopped and put out the flames. Russell sat nearby and did not assist Dicken. Dicken was burned on over 75% of her body. Dicken died from smoke inhalation shortly after arriving at the hospital.

As noted above, Russell was convicted of reckless homicide, a class C felony, and arson, a class A felony.

■ Russell claims that Indiana has had a separate and distinct double jeopardy analysis prior to the time when the federal analysis and Indiana's analysis converged and became coterminous. Russell contends that the two may be viewed as distinct again.

In *Games v. State*, 684 N.E.2d 466 (Ind. 1997), *modified on other grounds*, 690 N.E.2d 211 (Ind.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998), and *Grinstead v. State*, 684 N.E.2d 482 (Ind. 1997), the Indiana Supreme Court announced that Indiana's previous interpretations of the federal double jeopardy clause with regard to multiple punishments did not comport with federal jurisprudence as explained in *U.S. v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

The Indiana Supreme Court has not addressed the question whether a separate and distinct double jeopardy analysis exists pursuant to the Indiana Constitution. *See, e.g., Brown v. State*, 703 N.E.2d 1010, 1015 n. 4 (Ind.1998) (the court deemed the proposed state constitutional claim waived for failure to provide authority or independent analysis). Russell's contention that a separate and distinct state double jeopardy analysis exists and remains viable finds some support in Justice Sullivan's concurring opinion in *Games*. Justice Sullivan stated:

> I fully concur in the opinion, however, because, whatever the nuances of federal constitutional law in this area after *Dixon*, today's opinion makes no change in

---

3. Ind.Code Ann. § 35–41–1–4 (West 1998).

Indiana constitutional or statutory law in this regard and so the precedential value of our earlier cases is not affected.

*Games v. State,* 684 N.E.2d at 481–82.

In *Moore v. State,* 691 N.E.2d 1232 (Ind. Ct.App.1998), and more recently in *Guffey v. State,* 705 N.E.2d 205 (Ind.Ct.App.1999),[4] this court has held that the double jeopardy analysis is the same under the federal and state constitutions. A close reading of *Moore* reveals a materially different analysis than that presented by Russell.

In *Moore,* the appellant advocated for *adoption* by Indiana of the federal analysis which developed after *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The post-*Blockburger* federal analysis expanded double jeopardy protections and was followed by Indiana courts. According to Moore's contentions, Indiana should *adopt* those expanded protections as the separate Indiana double jeopardy analysis. Moore's chief complaint was that under a same-elements *Blockburger* test, most double jeopardy claims would be foreclosed, thereby working a hardship upon defendants. Moore urged that defendants should be able to argue that the double jeopardy analysis looks beyond the elements of the crimes and extends to the charging instruments, jury instructions, and the proof at trial as had the federal analysis after *Blockburger,* and before the expanded double jeopardy analysis was retracted in *Dixon. See Moore,* 691 N.E.2d at 1234 n. 3.

Under the analytical framework proposed by the appellant, the *Moore* court: compared the similar language within the Indiana and federal constitutions; observed the fact-sensitive nature of using the two-pronged test which had evolved; and concluded that the

*Blockburger* same-elements test would "yield clear and consistent results." *Id.* at 1236.

As noted by Chief Justice Randall T. Shepard in *Second Wind for the Indiana Bill of Rights,* 22 IND. L. REV. 575, 578 (1989), the courts' ability to address state constitutional claims is dependent upon litigants properly raising and analyzing the claims. Russell has properly raised the historical existence of a separate and distinct double jeopardy analysis based upon the Indiana Constitution.

Russell contends that Indiana's double jeopardy analysis predates the federal analysis: "Long before the United States Supreme Court's holding that the federal double jeopardy clause was applicable to the states through the Fourteenth Amendment, Indiana had begun its distinct double jeopardy analysis." Brief of Appellant at 6 (citing *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). Arguably, the state and federal analyses converged after *Benton.* Thus, in essence, Russell argues that Indiana used the federal analysis as it evolved and expanded in the direction preferred by Indiana. After *Dixon* announced the retraction of federal double jeopardy protections, Indiana can still trace a line of double jeopardy protections which began before the federal and state lines converged. The pronouncement in *Dixon* marks the divergence of the lines which were intertwined for a period of time.

As did the appellant in *Moore,* Russell admits that her double jeopardy claim would fail under the *Blockburger* same-elements test. She makes her argument strictly under the Indiana Constitution. Russell persuasively, though not in great detail, argues that an historical basis exists for a separate and distinct double jeopardy analysis under the Indiana Constitution.[5]

---

**4.** Although the *Guffey* court followed the decision in *Moore,* it noted that at least two recent cases found that *Games* cannot always be "limited to a strict comparison of specific statutory terms used to define the elements of each crime." *Guffey,* 705 N.E.2d at 207 n. 5 (citing *Moore v. State,* 698 N.E.2d 1203, 1205 (Ind.Ct.App.1998) *trans. denied;* and *Goudy v. State,* 689 N.E.2d 686, 698 (Ind.1997) (attempted carjacking was a lesser included offense of attempted robbery where the property taken was a motor vehicle, but if the property taken in the robbery had been other

than the car, the offense would not have been a lesser included offense)).

**5.** In *Boehm v. Town of St. John,* 675 N.E.2d 318 (Ind.1996), and *Ratliff v. Cohn,* 693 N.E.2d 530 (Ind.1998), our supreme court explained some of the appropriate means to raise new claims under the Indiana Constitution. Russell does not purport to raise a new claim. Instead she requests review under the existing Indiana double jeopardy analysis which she tracks from the mid–1800's to the present. Thus, we do not find her

Russell notes that, as early as 1856, Indiana's double jeopardy clause was invoked to discharge a defendant. *Miller v. State*, 8 Ind. 325 (1856) (implicitly overruled by *State v. Walker*, 26 Ind. 346 (1866)); *see also* Chief Justice Shepard, *Second Wind for the Indiana Bill of Rights*, 22 IND. L. REV. at 578. As recognized by Russell, Indiana's double jeopardy clause was first used in the context of barring successive prosecutions. Later the clause was applied to multiple punishments. In *Kokenes v. State*, 213 Ind. 476, 13 N.E.2d 524 (1938), the court relied upon the double jeopardy clause of the Indiana Constitution, as well as earlier Indiana cases, to support a finding that a defendant should not be convicted of both the greater and the lesser included offenses of robbery, for a single act of robbery. The *Kokenes* court quoted an 1879 decision approvingly:

1. When the facts constitute but one offence, though it may be susceptible of division into parts, as in larceny for stealing several articles of property at the same time, belonging to the same person, a prosecution to final judgment for stealing a part of the articles will be a bar to a subsequent prosecution for stealing any other part of the articles, stolen by the same act.

2. When the facts constitute two or more offences, wherein the lesser offence is necessarily involved in the greater—as an assault is involved in an assault and battery, as an assault and battery is involved in an assault and battery with intent to commit a felony, and as a larceny is involved in a robbery--*and when the facts necessary to convict on a second prosecution would necessarily have convicted on the first, then the first prosecution to a final judgment will be a bar to the second.*

3. But when the same facts constitute two or more offences, wherein the lesser offence is not necessarily involved in the greater, and when the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second, although the offences were

both committed at the same time and by the same act.

*State v. Elder*, 65 Ind. 282, 285 (1879) (emphasis supplied). Relying *inter alia* upon the decision in *Kokenes*, the court found that a "double sentence for armed robbery and for robbery" stemming from a single episode could not stand. *Havener v. State*, 234 Ind. 148, 151, 125 N.E.2d 25, 27 (1955).

A line of cases from the 1950's through the 1980's, with *Jackson* and *Elder* at their root, built upon the theme within *Kokenes*. This line of cases relied upon state common law for the proposition that a defendant cannot be convicted and sentenced for both a greater and a lesser included offense. In *Carter v. State*, 229 Ind. 205, 96 N.E.2d 273 (1951), the court relied upon *Kokenes*, and footnoted *Jackson* and *Elder*, to determine that a defendant could not be sentenced for both a greater and a lesser included offense. In *Steffler v. State*, 230 Ind. 557, 104 N.E.2d 729 (1952), the court examined the elements of two crimes and the charging informations, and relied upon common law in *Jackson, Elder, Kokenes,* and *Carter.* Russell cites representative cases which can trace a line from the decisions in *Jackson, Elder,* and *Kokenes. See, e.g., Sandlin v. State*, 461 N.E.2d 1116 (Ind.1984); *James v. State*, 274 Ind. 304, 411 N.E.2d 618 (1980); *Pointon v. State*, 274 Ind. 44, 408 N.E.2d 1255 (1980); *Franks v. State*, 262 Ind. 649, 323 N.E.2d 221 (1975).

Contemporaneously, another line of cases developed which intermingled with the analysis of *Jackson, Kokenes,* and their progeny. This line of cases gradually incorporated federal and state constitutional claims with federal and state common law. In *Thompson v. State*, 259 Ind. 587, 290 N.E.2d 724 (1972), cert. denied, 412 U.S. 943, 93 S.Ct. 2788, 37 L.Ed.2d 404 (1973), the defendant argued that, pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Art. 1, § 14 of the Indiana Constitution, his separate convictions for selling and possessing illicit drugs violated double jeopardy protections. The court noted the prohibitions of the double jeopardy clauses and federal and state common law interpreting

failure to engage in the *Boehm* and *Ratliff* analy-

ses as a flaw in the presentation of her claim.

the clauses, and determined that double jeopardy was not implicated. *Id.* Instead, relying upon state statutes, federal common law, and state common law including *Havener, Carter,* and *Kokenes,* the court held that the defendant could not be convicted or sentenced on both a greater and a lesser included offense. *Id.; see also Bean v. State,* 267 Ind. 528, 371 N.E.2d 713 (1978) (following *Thompson,* without mention of federal or state constitutions, the court determined that it was error to enter a judgment for both premeditated murder and felony murder).

In an effort to clarify the branch of double jeopardy regarding multiple punishment and the difference between the same offense and the same act, the court in *Elmore v. State,* 269 Ind. 532, 382 N.E.2d 893 (1978), specifically disapproved of portions of *Thompson.* The *Elmore* court noted that *Thompson* incorrectly determined that double jeopardy was not implicated in its analysis. *Id.* The *Elmore* court also found that Indiana became bound by federal double jeopardy analysis, *i.e.* the *Blockburger* analysis, after the United States Supreme Court's decision in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. *Id.*

Yet, the court continued on the path taken by *Thompson* and *Bean* in *Haggard v. State,* 445 N.E.2d 969 (Ind.1983), *modified on other grounds, Bailey v. State,* 472 N.E.2d 1260 (Ind.1985). The defendant in *Haggard* argued that his convictions for criminal confinement and rape and the resulting consecutive sentences violated the double jeopardy clause of the United States Constitution. The court examined the facts and circumstances to conclude that the dual convictions violated "one of the most fundamental principles of criminal law ... that a person may not be twice punished for a single offense arising from one set of operative circumstances." *Id.* at 971 (citing *Hutcherson v. State,* 269 Ind. 331, 380 N.E.2d 1219 (1978); *Bean,* 267 Ind. 528, 371 N.E.2d 713, and *Thompson,* 259 Ind. 587, 259 Ind. 587, 290 N.E.2d 724). The *Haggard* court recognized the *Blockburger* analysis, approved in state common law, wherein the

crimes of rape and kidnapping (confinement) would be viewed as separate and distinct crimes because each requires proof of an additional fact which the other does not. *Id.* Apparently referring to the same distinctions observed by the court in *State v. Elder,* 65 Ind. at 285, regarding the circumstances which constitute separate crimes though committed "at the same time and by the same act," *id.,* the court said:

> However, in this case the double jeopardy issue does not arise from the simultaneous acts of rape and confinement but rather from the convictions in two counties for the one, continuing and uninterrupted act of confinement. It is clearly established that where a defendant has been once convicted and punished for a particular crime, principles of fairness and finality require that he not be subjected to the possibility of further punishment by being tried or sentenced a second time for the same offense by the same sovereign power.

*Id.* at 972.[6]

The narrowing gap between State and federal analyses was closed in *Bevill v. State,* 472 N.E.2d 1247 (Ind.1985). With Justice Pivarnik dissenting in favor of the *Blockburger* analysis, the court reviewed the defendant's claim that his convictions and sentences for both attempted murder and burglary with bodily injury as a Class A felony violated the Indiana Constitution, Art. 1, § 14 and the Fifth Amendment of the United States Constitution which prohibit multiple punishments for the same offense. *Id.* (citing *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), and *Thompson v. State,* 259 Ind. 587, 290 N.E.2d 724 (1972)). The court analyzed the charging informations, the statutory elements, and the evidence and found:

> The conclusion is therefore unavoidable, and consonant with appellant's claim, that the attempted murder charge, and the bur-

**6.** The *Haggard* court went on to explain that neither the Indiana nor the federal Constitution would bar a state prosecution for the same conduct which was the subject of a prior federal prosecution because they are separate or dual sovereigns. *Id.* The court noted that Indiana would bar such prosecutions by statute. *Id.* at 972 n. 1.

glary charge to the extent that it includes the added element of resultant bodily injury, are based upon and seek punishment for the same stabbing and the same injurious consequences to the same person.

*Id.* at 1254. The *Bevill* court relied upon the state and federal constitutions, as well as Indiana common law, to conclude that the defendant's class A burglary conviction had to be vacated and entered as a class B burglary instead. *Id.; see also Flowers v. State,* 481 N.E.2d 100 (Ind.1985) (relying upon *Bevill* and *Elmore* for the proposition that multiple distinct crimes occurred but their enhancement for the same bodily injury could not stand); *Malott v. State,* 485 N.E.2d 879 (Ind.1985) (vacating the conviction for burglary resulting in serious bodily injury where the defendant was convicted of attempted murder for the same shooting of the victim, and stating that multiple punishment violated "both federal and state double jeopardy prohibitions." *Id.* at 886).

In *Bustamante v. State,* 557 N.E.2d 1313 (Ind.1990), the court analyzed the charging informations, the elements of the crimes, and the evidence to conclude:

> In this case, appellant committed murder by means of setting fire to his house, and the sentence imposed on the murder charge punishes him for the fatal injury he inflicted on his wife by that instrumentality. Imposition of an A felony sentence for arson under I.C. 35–43–1–1(a)(2), based on the infliction of serious bodily injury on Gloria Bustamante by means of fire, punishes appellant twice for the same injury. This offends Article 1, § 14 of the Indiana Constitution and the Fifth Amendment of the United States Constitution, which prohibit multiple punishment for the same offense. *King v. State* (1988), Ind., 517 N.E.2d 383; *Bevill v. State* (1985), Ind., 472 N.E.2d 1247. Therefore, the thirty-year sentence imposed by the trial court on the arson count must be vacated.

*Id.* at 1323.

Indiana cases using the Indiana Constitution provide a traceable line documenting an historical basis for the proposition that Indiana does not need to *adopt* a double jeopardy analysis separate and distinct from the federal analysis because it has had a distinct analysis that has been evolving since shortly after ratification of the 1851 Indiana Constitution. *Games* and *Grinstead* require Indiana to use the federal analysis when defendants argue double jeopardy violations under the United States Constitution. Russell contends, and we agree, that she is entitled to the analysis under the Indiana Constitution that was in place before *Benton v. Maryland,* that evolved parallel to and in conjunction with the federal analysis until *Dixon,* and that is now a disentangled, distinct analysis once again.

We turn now to Russell's particular circumstances using the pre-*Dixon* double jeopardy examination applicable to claims under the Indiana Constitution, wherein courts look beyond the elements of the crimes and view the charging instruments, the jury instructions, and the proof at trial. *See Moore,* 691 N.E.2d at 1234 n. 3. Russell was charged with murder, and arson, a class A felony. The two-count Information stated:

COUNT I

> Sherrel Russell, on or about February 9, 1997, did knowingly kill another human being, namely: Nicole Dicken, by setting fire to the person of Nicole Dicken, thereby inflicting mortal injuries upon Nicole Dicken, causing Nicole Dicken to die;

COUNT II

> Sherrel Russell, on or about February 9, 1997, did knowingly, by means of fire, damage property of Nicole Dicken, namely: clothing of Nicole Dicken, under circumstances that endangered human life, resulting in serious bodily injury to Nicole Dicken, that is: death. . . .

*Record* at 33.

At trial, the evidence supported the giving of an instruction on reckless homicide, a class C felony, as a lesser included offense of murder. The jury was instructed:

> Included in the crime of murder, as charged in this case, is the lesser included offense of reckless homicide.

> A person who recklessly kills another human being commits Reckless Homicide, a Class C felony.

To convict the defendant of Reckless Homicide the State must have proven each of the following elements:

The defendant, Sherrel Russell;

1.   did recklessly,

2.   kill,

3.   another human being, to-wit: Nicole Dicken.

\* \* \*

A person engages in conduct "recklessly" if she engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

*Record* at 307–08. As to the arson charge, the jury was instructed:

The crime of arson is defined by statute as follows:

A person who, by means of fire or explosive knowingly or intentionally damages property of any person under circumstances that endanger human life, commits arson, a Class B felony. However, the offense is a Class A felony if it results in either bodily injury or serious bodily injury to any person other than the defendant.

To convict the defendant the State must have proven each of the following elements:

The defendant, Sherrel Russell;

1.   did knowingly,

2.   by means of fire,

3.   damage property of Nicole Dicken, namely:

clothing of Nicole Dicken,

4.   under circumstances that endangered human life,

5.   which resulted in serious bodily injury to Nicole Dicken, that is: death.

*Record* at 303.

■ As explained above, Russell was convicted of reckless homicide, as a class C felony, and arson, as a class A felony. Under the pre-*Dixon* federal analysis, and as Russell argues, under the Indiana double jeopardy analysis applicable to multiple punishments, the death of Nicole Dicken was impermissibly used to gain a class A felony arson conviction and to support the reckless homicide conviction.

The subsection of the arson statute under which Russell was charged has as its focus, "the protection of human life, not of property." *See Bustamante v. State*, 557 N.E.2d at 1323 (vacating an arson sentence, where the defendant was convicted of murder for the same fire which killed his wife, because the sentence offended "Article 1, § 14 of the Indiana Constitution and the Fifth Amendment of the United States Constitution, which prohibit multiple punishment for the same offense". *Id.*). Thus, the class A arson conviction could not be sustained without the injury to human life, despite the State fulfilling the element of damage to property by alleging and producing evidence that Dicken's clothing was set on fire. As in *Bustamante*, the single episode of arson was the instrumentality which caused a single death. Therefore, two sentences were imposed for the same injurious consequences, to the same victim, during a single confrontation. *See Bowling v. State*, 560 N.E.2d 658 (Ind.1990).

Accordingly, Russell is entitled to relief on double jeopardy grounds employing the Indiana Constitution and its separate analysis. We do not, however, grant Russell the relief she requests. Russell requests that the conviction for arson, as a class A felony, be reduced to a class B felony. Instead, as noted by the State at oral argument, the class A felony arson conviction should stand and Russell's reckless homicide conviction should be vacated on double jeopardy grounds. The State proved the elements to sustain the conviction for arson as a class A felony. The reckless homicide, based upon the same death used to convict Russell of arson, as a class A felony, is subsumed in the arson conviction.

Judgment affirmed in part, and reversed in part.

BAILEY, J., concurs.

BAKER, J., dissents with opinion.

**BAKER, Judge, dissenting**

I respectfully dissent. In my view, we have recently confronted this identical issue and reached a conclusion different from the majority's holding in the instant case. In *Moore v. State*, 691 N.E.2d 1232 (Ind.Ct.App. 1998), we held that "the better alternative is to remain consistent with federal double jeopardy analysis and utilize the *Blockburger* 'same elements' test when our courts are asked to analyze double jeopardy claims under the Indiana Constitution." *Id.* at 1236; *see Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). For the reasons stated in *Moore*, I would conclude that the double jeopardy analysis is the same under both the federal and state constitutions. Therefore, the analysis should focus on the statutory elements of the offenses in question to determine whether the legislature "intended to impose separate punishments for multiple offenses arising in the course of a single [incident]." *Games v. State*, 684 N.E.2d 466, 474 (Ind.1997), *modified on other grounds*, 690 N.E.2d 211 (1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998).

I would further hold that our reckless homicide and arson statutes do not constitute the same offense under *Blockburger* because each provision requires proof of an additional element which the other does not. Specifically, reckless homicide requires a reckless killing, while arson as a Class A felony requires that a person intentionally or knowingly damage property. *See Berry v. State*, 703 N.E.2d 154, 159 (Ind.1998) (holding that convictions for murder and Class A felony arson did not violate the *Blockburger* test even though both offenses were based on the same death resulting from fire). Therefore, I would find that the trial court did not violate Russell's double jeopardy rights under the Indiana Constitution.