**Larry BURK, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 11A01–9805–CR–191.**

Court of Appeals of Indiana.

Aug. 31, 1999.

Jeffrey A. Baldwin, Baldwin & Dakich, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Stephen K. Tesmer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Larry Burk, Jr. ("Burk") appeals his convictions following a jury trial for Resisting Law Enforcement, a Class D felony, Carrying a Handgun Without a License, a Class A misdemeanor, and Possession of Marijuana, a Class D felony.

We affirm.

### ISSUES

Burk raises three issues which we reorder and restate as:

1. Whether the prosecutor improperly commented on Burk's invocation of his post-arrest right to remain silent.

2. Whether the evidence was sufficient to sustain Burk's conviction for resisting law enforcement with a deadly weapon.

3. Whether Burk's convictions for resisting law enforcement with a deadly weapon and carrying a handgun without a license subjected him to double jeopardy.

### FACTS

On May 7, 1997, at approximately 9:34 p.m., Indiana State Police Trooper Brent Johnson stopped a vehicle with defective brake lights. Burk was a passenger in that vehicle. When Johnson leaned into the car to question its occupants, he detected the odor of unburnt marijuana. Based on Burk's movements and appearance, Johnson believed he was under the influence of alcohol or drugs.

While Trooper Johnson patted down the driver outside the vehicle, he noticed Burk reach underneath the seat. Suspecting that weapons were involved, Johnson ordered Burk to get out of the car and place his hands on the roof. When Johnson attempted to search him, Burk abruptly turned and started to flee. The officer ordered Burk to stop, but Burk continued to run. While pursuing Burk on foot, Johnson saw Burk draw something from in front of him with his right hand. After stumbling in a ditch, Johnson noticed that Burk used only his left hand to assist him in standing. Johnson believed that Burk had drawn a weapon.

Johnson caught Burk and tackled him. Burk fell with his arms at his sides. When Johnson assisted Burk to his feet, the officer found a handgun lying to the right of Burk's knee, where his arms had rested. Johnson radioed for assistance. When other officers arrived, they searched Burk and found a bag of marijuana and six

rounds of ammunition in his coat. A second bag of marijuana and more ammunition were recovered from the car. Burk was charged and convicted of resisting law enforcement while drawing or using a deadly weapon, carrying a handgun without a license and possession of marijuana. He now appeals.

## DISCUSSION AND DECISION

### Issue One: Reference to Post–Arrest Silence

■ At trial, Burk did not testify, but, through the testimony of the driver of the vehicle, he proffered the defense that the marijuana and the handgun belonged to the driver rather than him. In final argument, the prosecutor stated:

I don't know ... I myself can't put myself in a position where I'm with a friend who claims that he finds marijuana just driving around in the middle of the night, and then I'm tired, I've been drinking at work and my friend gives me a jacket, I stretch it across me and it just happens to have a loaded gun and marijuana. So it's hard for me to get into that, but just try to put yourself in that situation. And then add to that the police stop you. Okay, and even take away the flight, I mean, say you don't even flee from them, and the police find that stuff. *I mean to me I cannot believe the defendant didn't say I didn't know that was there.* The jacket's not——I mean——.

Record at 315–16 (emphasis added). Burk objected on the ground that the prosecutor improperly commented on the defendant's right to remain silent. The trial court overruled the objection, but Burk did not request a mistrial. He now claims that the prosecutor's comment requires reversal of his convictions.

■ In support of his contention, Burk cites *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98 (1976), where the United States Supreme Court held that the use for impeachment purposes of the defendant's silence, at the time of arrest and after receiving *Miranda* warnings, violates the Due Process Clause of the Fourteenth Amendment. Our cases reflect the same rule. *Miller v. State*, 702 N.E.2d 1053, 1073 (Ind.1998). During trial, the State may not comment upon a defendant's post-arrest post-*Miranda* warning silence because that silence may be no more than an exercise of the Fifth Amendment right. *Id.* However, due process is not violated by reference to a defendant's post-arrest silence where *Miranda* warnings were not given. *Henson v. State*, 514 N.E.2d 1064, 1067 n. 1 (Ind. 1987) (citing *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982)).

■ In this case, we cannot say with certainty whether *Doyle* applies. It appears that the prosecutor referred to Burk's silence at the scene of the arrest before any *Miranda* warnings were given. In that situation, there is no *Doyle* violation. Even if we assume that *Miranda* warnings had been given, a comment regarding the defendant's post-arrest silence is subject to the harmless error doctrine. *Bieghler v. State*, 481 N.E.2d 78, 92 (Ind. 1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). Among the factors to be addressed in this analysis are 1) the use to which the prosecution puts the post-*Miranda* silence; 2) who elected to pursue the line of questioning; 3) the quantum of other evidence of guilt; 4) the intensity and frequency of the reference; and 5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions. *Jewell v. State*, 672 N.E.2d 417, 424 (Ind.Ct. App.1996), *trans. denied*.

Here, the effect of the prosecutor's comment on the jury was minimal. During his case-in-chief, Burk had raised the issue of the driver's ownership of the jacket which contained marijuana. Yet, Burk had previously admitted that the jacket was his. Record at 306(a). Further, the prosecutor's argument, which referred to Burk's post-arrest silence regarding knowledge of

the jacket's contents, was an isolated comment. And the trial court instructed the jury in its Final Instruction No. 22 that the unsworn statements of counsel should not be considered as evidence. Record at 106. In addition, there was substantial evidence of Burk's guilt. Under these circumstances, any improper reference to Burk's silence was not a substantial factor contributing to the verdicts, and any error was harmless beyond a reasonable doubt.

**Issue Two: Sufficiency of the Evidence**

■ Burk also contends that the evidence is insufficient to sustain his conviction for resisting law enforcement, as a Class D felony. Specifically, Burk claims that the State failed to demonstrate that he "drew" a deadly weapon to justify the felony classification. When reviewing a claim of insufficient evidence, we consider the evidence most favorable to the verdict, along with all reasonable inferences to be drawn therefrom, and we determine whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Moore v. State,* 702 N.E.2d 762, 763 (Ind.Ct.App.1998). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* If there is substantial evidence of probative value supporting each element of the crime, we will not disturb the conviction. *Id.*

Indiana Code Section 35-44-3-3, which governs the offense, provides in part:

(a) A person who knowingly or intentionally:

. . .

(3) flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

(b) The offense under subsection (a) is a:

(1) Class D felony if, while committing it, the person *draws* or uses *a deadly weapon* . . . .

(emphasis added). In *Dunkle v. State,* 241 Ind. 548, 552, 173 N.E.2d 657, 659 (1961), our supreme court defined "drawing" as "the *act by which the particular weapon is taken out of or removed for use,* from the enclosure which contained it." Thus, "drawing" a deadly weapon constitutes a separate and distinct offense from "pointing" or "aiming" a deadly weapon. *Id.* at 553-54, 173 N.E.2d at 660.

■ Here, during the foot pursuit, Trooper Johnson saw Burk draw something from in front of him with his right hand. Record at 152. The officer noticed that Burk used only his left hand to stand back up after stumbling into a ditch. *Id.* When he assisted Burk to his feet, Johnson found a handgun under the right side of Burk's body, where his arm had rested when he fell. Record at 153-54. This constitutes sufficient evidence from which a jury could reasonably infer that Burk knowingly or intentionally drew the handgun, that is, removed it from its enclosure for use, while being pursued by Trooper Johnson. Burk's claim that "it is equally as likely that such removal was to keep [him] from losing the handgun," Reply Brief of Appellant at 1, is but an invitation to reweigh the evidence, which is not our prerogative on appeal. His claim of error on this issue fails.

**Issue Three: Double Jeopardy**

■ Burk also contends that his convictions for resisting law enforcement and carrying a handgun without a license subjected him to double jeopardy. Specifically, Burk maintains that the use of the same handgun to support both convictions violates the "same elements" test of the both the United States and Indiana Constitutions. In the alternative, Burk argues for a distinct and independent state double jeopardy analysis under Article I, Section 14 of the Indiana Constitution.

■ This court has held that the protection afforded a defendant against double jeopardy under the Indiana Constitu-

tion is coextensive with the protection against double jeopardy under the United States Constitution. *See Moore v. State,* 691 N.E.2d 1232, 1236 (Ind.Ct.App.1998). That conclusion complies with our supreme court's recent pronouncement that "'we find [no authority] from this Court, establishing an independent state double jeopardy protection based upon an analysis of the Indiana Constitution.'" *Carter v. State,* 686 N.E.2d 834, 838 (Ind.1997) (quoting *Games v. State,* 684 N.E.2d 466, 473 n. 7 (Ind.1997), *reh'g granted in part,* 690 N.E.2d 211 (Ind.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998)); *see Richardson v. State,* 687 N.E.2d 241 (Ind.Ct.App.1997), *trans. pending.* Thus, double jeopardy claims are controlled by the "same elements" test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Moore,* 691 N.E.2d at 1236.

In determining whether there are two offenses under *Blockburger,* the focus is on whether each statutory provision "requires proof of an additional fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309; *Grinstead v. State,* 684 N.E.2d 482, 485 (Ind.1997). The factual elements outlined in the charging instrument and jury instructions are not part of the inquiry, *Grinstead,* 684 N.E.2d at 486, although in a narrow class of cases it is necessary to take certain core facts into account. *See, e.g., Goudy v. State,* 689 N.E.2d 686 (Ind. 1997) (attempted carjacking is lesser-included offense of attempted robbery where property involved is same motor vehicle); *Bracksieck v. State,* 691 N.E.2d 1273 (Ind. Ct.App.1998) (where firearm is involved, pointing firearm as Class D felony and criminal recklessness as Class D felony are same offense).

As outlined above, a person resists law enforcement as a Class D felony where he draws a deadly weapon while knowingly or intentionally fleeing from a law enforcement officer after the officer has identified himself by visible or audible means and has ordered the person to stop. Ind.Code § 35–44–3–3. For double jeopardy purposes, the elements of the offense of possession of a handgun include both the possession of a handgun and the lack of a valid license. *Fields v. State,* 676 N.E.2d 27, 30 (Ind.Ct.App.1997), *trans. denied.* Thus, resisting law enforcement involves drawing a handgun while fleeing from a law enforcement officer, which carrying a handgun without a license does not. Conversely, carrying a handgun without a license involves the absence of a valid license, which resisting law enforcement does not. We find no double jeopardy violation under either the United States or Indiana Constitutions. Thus, we will not disturb Burk's convictions.

Affirmed.

SHARPNACK, C.J., concurs.

BAILEY, J., concurs in part and concurs in result in part with separate opinion.

BAILEY, Judge, concurring in part and concurring in result in part

I concur fully with the majority opinion as to Issues 1 and 2. However, I concur with the majority in result only as to Issue 3.

For the reasons set forth in *Russell v. State,* 711 N.E.2d 545 (Ind.Ct.App.1999), *trans. denied,* I do not agree with the majority that the Indiana Supreme Court's decisions in *Games v. State,* 684 N.E.2d 466 (Ind.1997), *modified on other grounds,* 690 N.E.2d 211 (Ind.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998), and *Grinstead v. State,* 684 N.E.2d 482 (Ind.1997) caused double jeopardy analysis under the Indiana Constitution to be one in the same with that of double jeopardy analysis under the United States Constitution.

Nevertheless, applying the distinct state double jeopardy test as articulated in *Russell,* I find that Burk's convictions for re-

sisting law enforcement with a deadly weapon and for carrying a handgun without a license did not subject him to double jeopardy under Article I, Section 14 of the Indiana Constitution.