FILED

Mar 27 2020, 6:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Thomas M. Leatherman
Leatherman & Miller Law Office
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jerry Rhodes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 27, 2020

Court of Appeals Case No.
19A-CR-2422

Appeal from the
Elkhart Superior Court

The Honorable
Stephen R. Bowers, Judge

Trial Court Cause No.
20D02-1811-F5-328

**Vaidik, Judge.**

# Case Summary

[1] Jerry Rhodes was convicted of Level 5 felony intimidation for threatening his estranged wife. The charge was enhanced from a Class A misdemeanor based on the allegation that he "drew a deadly weapon" while committing the

offense. He now appeals, arguing that the evidence does not support the enhancement. We affirm.

## Facts and Procedural History

On November 3, 2018, Rhodes became angry that his wife, A.R., was sending Facebook messages to other people and sent her a text message saying, "I can't believe you I will kill you both I promise F**kin New it." Ex. 1. After arguing with A.R. about her Facebook activity, Rhodes changed the locks to their home. The next day, A.R. moved out and went to live at her mother's house along with her and Rhodes's three daughters: D.R., H.R., and J.R.

Over the next few days, Rhodes sent H.R. several text messages threatening A.R. Those messages said, among other things:

- And you see [H.R.] that is true love I have for you mom I would give my own life for her we have been together ever since high school were high school sweethearts I will not let some of these f**king idiots on Facebook that are jealous that they don't have what me and your mom have tear me apart motherf**kers think I'm joking their gonna push me to the point and I'll kill somebody that's f**ked up that's what true love does to people makes him do crazy things

- I can promise you one thing I will burn in hell before I see your mom with another man . . . If you don't understand ask your mom I will end it for both of us Maybe a little crazy in love with her At least we'll go together

- One last thing tell your mom keep play me like a fool And will be together sooner than she thinks Playing her single life on Facebook I know in my heart we're gonna be together forever

- Yeah I have lost my f**cking mind . . . Good bye Remember this is your mom's fault I sorry [H.R.] that it has to end like this

- I warned [A.R.] I'm gonna have a couple more drinks and I'll be there And I promise you guys won't be laughing Your dad is one crazy son of b*tch gonna make a good story

Exs. 2-5.

[4]    On November 6, Rhodes called A.R. At the time, A.R. was at her mother's house along with H.R. and D.R. A.R. answered her phone and put the call on speakerphone. H.R. overheard Rhodes asking A.R., "why would you do this to me, you're a cheater, where are you, I'm going to kill you." Tr. p. 38. The phone call ended, and five to ten minutes later, D.R. heard a truck pull up and said, "is that dad?" *Id.* at 39. H.R. looked out the window and saw Rhodes's truck parked in front of the house. *Id.* at 40. H.R. then saw Rhodes come around the truck and noticed that he was holding an AR-15, which was propped up on his left shoulder with the barrel pointing up. *See id.* at 41. H.R. "immediately started to freak out" and "ran through the house" saying "he has a gun; he's here." *Id.* at 42. A.R. heard H.R. and then heard Rhodes kick the door and say, "open the f**king door." *Id.* at 17. A.R. made sure that the door

was locked and then grabbed her mother, hid in the basement, and called 911. Rhodes left before police arrived but was apprehended later the same day.

[5] The State charged Rhodes with Level 5 felony intimidation, enhanced from a Class A misdemeanor for drawing a deadly weapon while committing the offense. The case proceeded to a bench trial in August 2019. The court found Rhodes guilty, explaining, "So when you show up at the door, the context is that it's going to be perceived as a very real threat to kill somebody or to harm somebody." *Id.* at 121.

[6] Rhodes now appeals.

# Discussion and Decision

[7] Rhodes argues that there is insufficient evidence to support the enhancement. When reviewing sufficiency-of-the-evidence claims, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We will only consider the evidence supporting the judgment and any reasonable inferences that can be drawn from the evidence. *Id.* A conviction will be affirmed if there is substantial evidence of probative value to support each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[8] Indiana Code section 35-45-2-1(a)(2) provides that "[a] person who communicates a threat with the intent . . . that another person be placed in fear of retaliation for a prior lawful act . . . commits intimidation," a Class A

misdemeanor. However, the offense is a Level 5 felony if "while committing it, the person draws or uses a deadly weapon." Ind. Code § 35-45-2-1(b)(2)(A). Here, the State alleged that Rhodes communicated a threat to A.R. with the intent that she be placed in fear for communicating with another person on Facebook and that in committing said act, Rhodes drew a rifle. Appellant's App. Vol. II p. 25. Rhodes "does not dispute the statements he made on the phone or by text [qualify as threats] under the statute to be guilty of the class A misdemeanor." Appellant's Reply Br. p. 4. Rather, he argues that "[t]he evidence at trial completely failed to establish" that he "ever drew the weapon" or "drew the weapon while committing the crime." Appellant's Br. p. 6.

[9] Rhodes first argues that he did not "draw" the AR-15 because he did not (1) remove it from an enclosure or (2) point it at anybody. But "the salient character of 'drawing' a weapon is the common-sense understanding of bringing it forth and preparing it for use." *United States v. Suggs*, 624 F.3d 370, 374 (7th Cir. 2010). There is no question that Rhodes brought forth the AR-15 when he held it in his hand and propped it on his shoulder as he moved toward the house. And it can be reasonably inferred from his possession of the gun and his anger at A.R. that he was preparing to use it.[1]

---

[1] Rhodes cites *Daniels v. State*, where we indicated that a weapon is "drawn" when it is "taken out of or removed for use from an enclosure." 957 N.E.2d 1025, 1029 (Ind. Ct. App. 2011). For that proposition, we cited a 1961 decision from our Supreme Court, *Dunkle v. State*, 241 Ind. 548, 173 N.E.2d 657 (1961). As persuasively explained in *Suggs*, though, *Dunkle* is distinguishable because our Supreme Court was interpreting "several now-superceded statutory provisions," not "Indiana's modern statutory scheme." 624 F.3d at 374.

[10] Rhodes also argues that even if he did draw the AR-15, he did not do so "while committing" intimidation. He asserts that his threatening phone call to A.R. was "physically separated in time and distance from the separate act of possession of the gun at A.R.'s location." Appellant's Br. pp. 11-12. An enhanced conviction cannot stand if there is a break in the chain of events between the intimidation and the drawing of the weapon. *Hall v. State*, 837 N.E.2d 159, 161 (Ind. Ct. App. 2005), *trans. denied*.

[11] The evidence shows that on November 6, Rhodes called A.R. and told her, "I'm going to kill you." Tr. p. 38. Then five to ten minutes later, Rhodes showed up at the house where A.R. was staying, got out of his truck, took his AR-15 out of the truck, and came around the truck. *See id.* at 39-41. He then walked to the door, kicked it, and yelled, "open the f**king door." *Id.* at 17. This was one continuous chain of events. *See Hall*, 837 N.E.2d at 161. Accordingly, we hold that the evidence is sufficient to prove that Rhodes drew a deadly weapon while committing intimidation against A.R.

[12] Affirmed.

Najam, J., and Tavitas, J., concur.